909 So.2d 465 (2005)
Juan Diego OSPINA-BARAYA, Appellant,
v.
Patricia HEILIGERS, Appellee.
No. 4D05-132.
District Court of Appeal of Florida, Fourth District.
August 24, 2005.
*467 Carlos F. Gonzalez of Gonzalez & Walsh LLP, Miami, for appellant.
Lee Milich of Lee Milich, P.A., Fort Lauderdale, for appellee.
PER CURIAM.
Juan Diego Ospina-Baraya appeals the trial court's order enforcing a marital settlement agreement incorporated in a final judgment of dissolution and accepting in part and rejecting in part a Domestic Relations Commissioner's interpretation of the agreement. Based on our interpretation of the relevant provisions of the agreement, we affirm in part and reverse in part.
The marital settlement agreement contains the following provisions. Section 8 addresses equitable distribution and provides the following in subsection (c):
The Wife shall, simultaneously with the execution of this Agreement, transfer all of her right, title, and interest in the entity that owns the condominium located at Two Grove Isle, Unit 701, Miami, Florida. Husband shall be responsible for any and all fees incurred by the transfer contemplated herein, including recording fees, documentary stamps, and so forth. The husband shall retain all rental income from Feb. 1 forward and may at his option reside in the residence. However, the children are entitled to the benefit of 2/3 of the rental income or fair rental income from this property. The interest of the parties' children, is and shall remain a two-thirds interest in the property, or the entity that owns the property. Nothing contained in the provisions herein shall be construed so as to restrict the entity's option to alienate or transfer its interest in the condominium, so long as any proceeds from such a transfer [are] reinvested in property of equal or greater value, provided that the children's two-thirds interest remains and is carried into any successor property or properties.
The parties agree that the tuition, registration, fees, books and school related expenses commencing Feb. 1, 2004 shall be paid from the children's interest in the Grove Isle residence (reducing the children's interest in said residence by the cost of schooling, and increasing father's interest in the Grove Isle residence by a like amount).
The stock certificates reveal that each child's one-third interest is held in the name of Heiligers, in trust for, the child in question. There is no written trust agreement governing this relationship.
Several other sections of the agreement relate to the Grove Isle condominium entity. Section 5 of the marital settlement agreement provides that Heiligers would receive $6,000 per month in alimony until the younger child graduates from high school and that:
If Husband fails to deliver payment of any monthly amount, that failure shall constitute a curable breach. In the event the breach is not cured upon written notice to the Husband by the Husband within 15 days of the payment due date, his breach shall trigger a non-curable default without further notice or action by the Wife. If the Husband is in default, he shall be subject to a penalty consisting of his unconditional obligation to transfer by warranty deed any and all of his right, title and interest in the entity which owns the condominium whose common address is Two Grove Isle, Unit 701, Miami, Florida. The *468 Husband's interest in the entity that owns Unit 701 shall be held in escrow pursuant to an escrow agent to be signed and executed by the parties contemporaneously with this Agreement. Husband shall also pay any and all attorney's fees incurred as a result of prosecuting an action for failure to pay any monthly obligation or default, or both.
Section 6 of the marital settlement agreement provides that Heiligers would receive $4,000 per month in child support until both children reached majority, became self-supporting, became emancipated, or died and that:
If Husband fails to deliver payment of any monthly amount, that failure shall constitute a curable breach. In the event the breach is not cured upon written notice to the Husband by the Husband within 15 days of the payment due date, his breach shall trigger a non-curable default without further notice or action by the Wife. If the Husband is in default, he shall be subject to a penalty consisting of his unconditional obligation to transfer by warranty deed any and all of his right, title and interest in the entity which owns the condominium whose common address is Two Grove Isle, Unit 701, Miami, Florida. The Husband's interest in the entity that owns Unit 701 shall be held in escrow pursuant to an escrow agent to be signed and executed by the parties contemporaneously with this Agreement. Husband shall also pay any and all attorney's fees incurred as a result of prosecuting an action for failure to pay any monthly obligation or default, or both.
Finally, Section 8(d) provides that Ospina maintain a life insurance policy in the amount of $1.5 million for the benefit of the current beneficiaries and that:
If Husband causes, directly or indirectly, his life insurance policy to lapse, that failure shall constitute a curable breach. In the event the breach is not cured by the Husband after written notice to him within 15 days of the lapse in policy, his breach shall trigger a non-curable default without further notice or action by the Wife. If the Husband is in default, he shall be subject to a penalty consisting of his unconditional obligation to transfer by warranty deed any and all of his right, title and interest in the entity which owns the condominium whose common address is Two Grove Isle, Unit 701, Miami, Florida. The Husband's interest in the entity that owns Unit 701 shall be held in escrow pursuant to an escrow agent to be signed and executed by the parties contemporaneously with this Agreement. Husband shall also pay any and all attorney's fees incurred as a result of prosecuting an action for failure to pay any monthly obligation or default, or both.
Ospina sought the enforcement of the marital settlement agreement on several grounds, including that of the transfer of Heiligers's interest in the condominium entity. A Domestic Relations Commissioner/General Master heard motions to enforce the marital settlement agreement and entered a written report entitled Report on Summary Judgment/Enforcement Hearing. The commissioner included a summary of the testimony of Heiligers in the report as findings of fact and noted that Heiligers testified that she was concerned that Ospina wanted to hold the children's shares in the entity owning the condominium in a trust without a trust agreement, as she prefers an independent trustee, and to sell the condominium to purchase property in Colombia where it might be beyond the reach of Florida courts. Heiligers admitted that she removed *469 money from the entity account to pay expenses and indicated that all payments on the condominium were current except for the taxes and brokerage fees. Heiligers then acknowledged that there has never been a trust agreement or an independent trustee and that there is no contractual provision requiring a trustee or prohibiting Ospina from serving as trustee.
The commissioner also included a summary of the testimony of Ospina in the report as findings of fact and noted that he testified that he would not have signed the marital settlement agreement if there had been a restriction placed on his ability to sell the Grove Isle condominium and purchase property in Colombia that would generate more income for the benefit of his children's interest. Ospina further testified that the money which Heiligers removed from the entity account had not been repaid and that the broker's commission, tenant security deposit, certified public accountant fees, and annual corporate return fees were outstanding. He testified that the penalty provision relating to the condominium was included in the alimony and child support paragraphs to secure those payments.
The commissioner made the following conclusions of law in regard to the Grove Isle condominium and related entity:
13. It is uncontroverted that the Former Wife elected not to endorse the shares of stock in Golden Cape of Florida, Inc. Her defense is that she was apprehensive to do so because the Former Husband threatened that once he obtained the stock certificates and effective control over the Two Grove Isle condominium unit, that he was going to sell that asset and convert same into agricultural holdings in South America, over which this Court would have no enforcement authority. She says that she'll execute the stock transfer provided: (a) the Former Husband is not the Trustee for the Children and an "independent Trustee" is appointed; and (b) a Trust Agreement with certain restrictions on how the "converted" asset can be invested and where it can be invested.
14. The Former Wife is essentially seeking to rewrite the parties' contract. The Former Wife knew of her Former Husband's Family's connections to South America both politically and financially. If she had concerns and wanted certain restrictions imposed in connection with the terms of paragraph 8.c., she should have negotiated same at the time the parties entered into the Marital Settlement Agreement. Her defense is wholly without any legal merit whatsoever. It has no contractual, statutory or case law precedent. With regard to paragraph 8.c. she may certainly, in retrospect, have made a bad bargain. This Court agrees that if the Former Husband were to liquidate the asset of the condominium and invest the Children's 2/3rd's interest therein in Colombia, it is unlikely that this Court could exercise enforcement of certain obligations over him. However, the Former Wife and her legal Counsel knew or should have known this at the time of contracting. A Florida Court can reform a contract where it does not accurately express the true intention of the parties or where mutual mistake exists. Kartzmark v. Kartzmark, 709 So.2d 583 (Fla. 4th DCA 1998). The Former Husband's clear intention, as he testified to, was to have *470 the flexibility of being able to exchange the condominium asset for another asset which would spin-off a higher rate of return for his 1/3rd interest. In fact, his uncontroverted testimony was that this was a "make or break" provision and had the flexibility of asset conversion not been incorporated in paragraph 8.c. of the Marital Settlement Agreement, he would not have signed the contract. Florida law is clear that this Court cannot rewrite the contract where there is unilateral mistake by the Former Wife, because now, in the coolness of hindsight, the Former Wife {and her Counsel} may have erred. This is true even when it involves what is additional child support in the nature of private school tuition and expenses for the parties' Children, as the Trial Court previously approved this dubious arrangement without hesitation. It is now the law of the case.
15. Moreover, this Court is compelled to comment on the Former Wife's disingenuousness. She expresses concern over the Former Husband's misuse of the Children's 2/3rd's interest in Golden Cape of Florida, Inc. The Former Husband is not the parent who invaded the cash proceeds of the Corporation for his own purpose as the Former Wife didostensibly to pay expenses. The Former Wife, when the Former Husband did tender payment of child support and alimony never repaid the monies that she borrowed. Presumptively, the Former Wife who claims she can't afford to repair her air conditioning but who apparently values her country club membership more than the health and comfort of the Children and herself, needed the monies she borrowed to avoid default in her monthly country club membership dues. This priority by the Former Wife speaks volumes to this Court as to her credibility and sincerity. She did not file the Corporate Annual Report thus placing the entity which owns and holds the Children's 2/3rd's interest at risk. The Former Wife's actions have throughout jeopardized the interest of the parties' Children, not those of the Former Husband.
16. The Former Wife's obligation to sign over the stock certificates and deliver the Corporate bank account is an obligation in the nature of a property settlement and therefore not enforceable via the mechanism of contempt but is nevertheless enforceable.
Heiligers filed exceptions to the report of the commissioner/general master, including that the commissioner abused her discretion by ordering the transfer of all shares of the entity owning the condominium to Ospina where two-thirds of those shares were to be owned by the minor children, allowing the transfer without a trust agreement, and allowing the transfer where it will result in assets being transferred outside of Florida and the reach of the court so that the security contemplated in the alimony, child support, and life insurance provisions of the marital settlement agreement will be frustrated.
Following a hearing, the trial court then entered an order upon review of the commissioner's report. The trial court wrote the following concerning the condominium entity:
19. This Court find[s] that the General Magistrate misperceived the evidence and law on this aspect of her *471 REPORT. This Court is persuaded by her [Heiligers's] Counsel's argument at the EXCEPTIONS HEARING and as such finds that the parties' MARITAL SETTLEMENT AGREEMENT FOR DISSOLUTION OF MARRIAGE WITH PROPERTY AND DEPENDENT OR MINOR CHILDREN created an obligation on the part of the Former Wife to deliver to the Former Husband the stock in Golden Cape of Florida, Inc. thus transferring to him her one-third interest in the condominium unit located at Two Grove Isle, Unit 701, Miami, Florida, together with the Children's two-third's interest in said Corporation which owns and holds the condominium unit. The Former Husband's one-third interest is, in turn, to be held in escrow pursuant to an escrow agreement that was to be signed by the parties' [sic] contemporaneously with the execution of their MARITAL SETTLEMENT AGREEMENT FOR DISSOLUTION OF MARRIAGE WITH PROPERTY AND DEPENDENT OR MINOR CHILDREN. The Court finds that the parties failed to adhere to this obligation as set forth in paragraph 5. of the AGREEMENT so they should instanter create such as escrow agreement. The Former Husband's one-third interest shall be held by the escrow agent and not distributed to the Former Husband until such time as he has fully complied with his alimony and child support obligations. Upon satisfaction of the escrow terms, as set forth in the SETTLEMENT AGREEMENT FOR DISSOLUTION OF MARRIAGE WITH PROPERTY AND DEPENDENT OR MINOR CHILDREN the escrow agent shall turn the stock over to the Former Husband; or in the event of the Former Husband's prospective default, and subsequent failure to cure the default within the "cure" period per the terms of the SETTLEMENT AGREEMENT FOR DISSOLUTION OF MARRIAGE WITH PROPERTY AND DEPENDENT OR MINOR CHILDREN, then, in that event, the Former Husband shall be obliged to sign a warranty deed transferring all of his right, title and interest in realty to the Former Wife. Finally, as to paragraph 8.c. of the SETTLEMENT AGREEMENT FOR DISSOLUTION OF MARRIAGE WITH PROPERTY AND DEPENDENT OR MINOR CHILDREN the Court further notes that although she is obliged to transfer her one-third interest in the realty to the Former Husband, there is absolutely no language, either express or specific, therein that obliges the Former Wife to extinguish or terminate her role as the titleholder trustee for the parties' minor Children's two-third's interest in the Corporation which owns the condominium and transfer that role to the Former Husband. Accordingly, this Court finds that the Former Husband's MOTION TO ENFORCE MARITAL SETTLEMENT AGREEMENT AND COMPEL COMPLIANCE WITH FINAL JUDGMENT [Docket Entry # 67] should be DENIED for the reasons set forth in this paragraph.
2[0]. The Former Wife's obligation to sign over her one-third interest *472 in the Corporation via stock certificates and deliver the Corporate bank account is an obligation in the nature of a property settlement and therefore not enforceable via the mechanism of contempt but is nevertheless enforceable subject to the terms of the SETTLEMENT AGREEMENT FOR DISSOLUTION OF MARRIAGE WITH PROPERTY AND DEPENDENT OR MINOR CHILDREN which required the concurrent execution of an escrow agreement.
The trial court then ordered the parties to execute an escrow agreement within five days and ordered Heiligers to transfer her one-third interest in the condominium entity to Ospina while continuing to hold the children's two-thirds interest in the entity (although this is internally inconsistent with the trial court's conclusion of law that the condominium transfer provision created an obligation for Heiligers to transfer her one-third interest together with the children's two-thirds interest to Ospina, it is not inconsistent with trial court's conclusion that Heiligers was to remain trustee).
When reviewing a trial court's final judgment, "`[t]he interpretation of the wording and meaning of the marital settlement agreement, as incorporated into the final judgment, is subject to de novo review.'" Kipp v. Kipp, 844 So.2d 691, 693 (Fla. 4th DCA 2003) (citation omitted). A marital settlement agreement is construed as a matter of law, and the appellate court is on equal footing with the trial court in interpreting the agreement. Levitt v. Levitt, 699 So.2d 755, 756 (Fla. 4th DCA 1997). "It is well settled that a marital settlement agreement is subject to interpretation like any other contract." Id. The following rules regarding contract interpretation apply:
Where the terms of a marital settlement agreement are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document. It is only when a term in a marital settlement agreement is ambiguous or unclear that the trial court may consider extrinsic evidence as well as the parties' interpretation of the contract to explain or clarify the language.
Id. at 756-757. "[U]nambiguous language is to be given a realistic interpretation based on the plain, everyday meaning conveyed by the words" of the agreement. Kipp, 844 So.2d at 693. Furthermore, "a court must construe a contract in a manner that accords with reason and probability; and avoid an absurd construction." Id. In doing so, the court should interpret the agreement as a whole, giving effect to all of its provisions. See Leisure Resorts, Inc. v. City of West Palm Beach, 864 So.2d 1163, 1166 (Fla. 4th DCA 2003).
On appeal, Ospina contends that the commissioner's interpretation of the marital settlement agreement is the proper construction. The commissioner determined that Heiligers was required to transfer both her one-third interest and the two-thirds interest of the children to Ospina under the marital settlement agreement by signing over the relevant stock certificates. After this transfer, Ospina would be left with a one-third interest in the condominium entity and the children would be left with a two-thirds interest in the condominium entity. Ospina would serve as trustee of the children's two-thirds interest because the marital settlement agreement did not prevent Ospina from serving as trustee or require an independent trustee. The commissioner's report did not address the escrow agreement (as such was not discussed at the hearing before her). As a result of the commissioner's conclusions and the provisions of *473 the agreement, Ospina could alienate the condominium without any restrictions and purchase property of an equal or greater value in Colombia while protecting the children's interests.
Ospina makes several arguments in support of the commissioner's interpretation. First, if Heiligers is allowed to maintain trusteeship over the children's shares of the condominium entity, giving her the authority to vote their shares, she has not transferred all her right, title, and interest in the entity to Ospina, and he is effectively left as minority shareholder and would be unable to alienate the condominium in favor of more profitable property in Colombia. Second, Heiligers admitted during her testimony that she was required to transfer all the shares of the condominium entity to Ospina and that the marital settlement agreement is silent on the issue of trusteeship, an admission that Ospina asserts is supported by the clear and unambiguous language of the agreement. Third, the escrow agreement does not alter the stock transfer requirement and was never discussed before the commissioner.
Heiligers responds that the trial court's interpretation of the agreement is the proper construction. The trial court determined that Heiligers was required to transfer her one-third interest in the condominium entity and the children's two-thirds interest in the condominium entity to Ospina under the marital settlement agreement (although it ordered Heiligers to transfer only her one-third interest to Ospina while holding the children's two-thirds interest). As such, Ospina would be left with a one-third interest in the condominium entity and the children would be left with a two-thirds interest in the condominium entity with Heiligers to remain trustee because the marital settlement agreement does not provide for the termination of her trusteeship. Additionally, the trial court concluded that Ospina's one-third interest should be placed in escrow (an argument which was emphasized at the hearing before the trial court) until Ospina's obligation to provide child support, alimony, and life insurance terminated. As a result of the trial court's conclusion, Ospina would not be free to alienate the condominium in favor of property in Colombia, because as trustee for the children, Heiligers would vote as their proxy and could block any such alienation (and in fact, Ospina may not be able to vote any interest in the condominium entity under the trial court's construction of the agreement because his interest would also be held in escrow).
Heiligers makes several arguments in support of the trial court's interpretation. First, her one-third interest in the condominium entity was to be transferred into an escrow account and not directly to Ospina based on the marital settlement agreement, because if otherwise, there would be no penalty/security for Ospina's non-compliance with the alimony, child support, and life insurance provisions of the agreement. Second, removing Heiligers as trustee for the children's two-thirds interest would also remove the penalty/security for non-compliance because all interests would be united under Ospina's control, he could alienate the condominium, and he could then purchase property in Colombia beyond the reach of the court's enforcement authority.
Considering the arguments of the parties and the provisions of the marital settlement agreement, we conclude that there are four unambiguous provisions of the agreement that are relevant to the interpretation of the agreement in order to give effect to the full agreement.
The first provision is that in Section 8(c) providing that: "The Wife shall, simultaneously with the execution of this *474 Agreement, transfer all of her right, title, and interest in the entity that owns the condominium located at Two Grove Isle, Unit 701, Miami, Florida." This provision requires Heiligers to transfer her one-third interest in the condominium entity to Ospina (although Ospina is the transferee from the overall context of the section of the agreement rather than from specific language in the cited provision). The more difficult question is what it requires her to do regarding the children's two-thirds interest for which she serves as trustee. "A trustee, in the strictest sense, holds legal title to property which he administers for the named beneficiary in accordance with the terms of the instrument creating the trust." Cohen v. Friedland, 450 So.2d 905, 906 (Fla. 3d DCA 1984). As such, as trustee, Heiligers possesses title to the children's two-thirds interest, so that two-thirds interest must be transferred to Ospina, after which he will serve as trustee, because Heiligers can no longer do so, because if she did, she would retain title to the condominium entity by virtue of serving as trustee. Ospina is properly the new trustee because by virtue of receiving Heiligers's full interest, he necessarily receives the legal title with which a trustee is endowed, and the marital settlement agreement includes no provisions preventing Ospina from serving as trustee or requiring an independent trustee. This interpretation of this provision comports with that of the commissioner and not that of the trial court.
As a result of this conclusion regarding the first relevant provision of the contract, the second relevant provision of the contract, also contained within Section 8(c), will be given effect: "The interest of the parties' children, is and shall remain a two-thirds interest in the property, or the entity that owns the property." Regardless of whether Heiligers or Ospina serves as trustee, the children still possess equitable title to their two-thirds interest in the condominium entity, and such interest should be protected by the trustee. Therefore, even though the children's two-thirds interest in the condominium entity is transferred between the trusteeships of Heiligers and Ospina, it is unaltered and remains the same interest in the condominium entity. This provision was given effect by both the interpretation of the commissioner and that of the trial court.
The third relevant provision is the penalty provision contained in Sections 5, 6, and 8(d): "The Husband's interest in the entity that owns Unit 701 shall be held in escrow pursuant to an escrow agent to be signed and executed by the parties contemporaneously with this Agreement." The language of this provision expresses an intent that the one-third interest transferred between Heiligers and Ospina be placed in an escrow account, as security for the satisfaction of Ospina's alimony, child support, and life insurance obligations, until those obligations terminate. The children's two-thirds interest would not be placed in escrow under this agreement, even though Ospina would have legal title to the interest based on his status as trustee, because the marital settlement agreement does not provide that the children's interest should be placed in escrow. "The law recognizes the right of a person to execute a deed or other instrument conveying an interest in property and place it in escrow to be delivered only upon the happening of certain contingencies. When the deed is not delivered out of escrow nothing passes." Grossman v. Pollack, 100 So.2d 660, 661 (Fla. 3d DCA 1958). As such, if Heiligers's one-third interest is placed in escrow for Ospina, that one-third interest will not pass to Ospina until his obligations under the marital settlement agreement terminate. *475 However, as he will still serve as the trustee for his children and the proxy for their interests, which will remain outside of escrow, he will still control a majority of the shares in the condominium entity so that he could alienate the condominium in favor of a more profitable property in Colombia. This interpretation comports with that of the trial court. Furthermore, the trial court did not err in reaching this issue where Ospina did not object to the consideration of the issue for the first time before the trial court, especially where Ospina recognizes that the outcome of the issue has no impact on his ability to alienate the condominium and purchase property in Colombia because he will still be the trustee and proxy for the children's two-thirds interest. As such, affirming the trial court's interpretation of this provision will not interfere with the goal of giving full effect to the agreement.
The fourth provision is also located in Section 8(c): "Nothing contained in the provisions herein shall be construed as to restrict the entity's option to alienate or transfer its interest in the condominium, so long as any proceeds from such a transfer [are] reinvested in property of equal or greater value, provided that the children's two-thirds interest remains and is carried into any successor property or properties." The commissioner's interpretation of the relevant provisions of the agreement will give effect to this provision and allow Ospina to alienate the condominium and purchase more profitable property in Colombia. The trial court's construction of the marital settlement agreement, on the other hand, would frustrate this provision because as long as Heiligers remains the trustee for the children's two-thirds interest, Ospina will not be able to exercise his one-third interest, if within his control and not under escrow, to so alienate the property.
Based on our construction of these four unambiguous provisions and the agreement as a whole, we conclude that the trial court erred in its conclusions regarding the interest to be transferred and the trusteeship issue. However, the trial court properly concluded that the one-third interest to be transferred from Heiligers to Ospina was to be placed in escrow. Thus, this case is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
Affirmed in Part and Reversed in Part.
GUNTHER, WARNER and HAZOURI, JJ., concur.