ACCEPTED
03-17-00365-cv
21650658
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/5/2018 4:48 PM
JEFFREY D. KYLE
CLERK

# BROTHERTON LAW FIRM

## ATTORNEYS AND COUNSELORS AT LAW

**2340 FM 407, SUITE 200**
**HIGHLAND VILLAGE, TEXAS 75077**
TELEPHONE: **972-317-8700**
FACSIMILE: **972-317-0189**

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/5/2018 4:48:52 PM
JEFFREY D. KYLE
Clerk

**SHAWN M. BROTHERTON**                                                shawn@brothertonlaw.com

January 5, 2018

Jeffrey D. Kyle, Clerk
Court of Appeals for the Third District of Texas
P.O. Box 12547
Austin, Texas 78711-2547

RE:     Court of Appeals Number:     03-17-00365-CV
        Trial Court Case Number:     C-1-PB-16-002348

Dear Mr. Kyle,

In response to Appellees' motion to dismiss his challenge to sanctions awarded in the trial court below, Appellant Mateo Cortez has demonstrated to the Court that he has standing to challenge the erroneous sanctions order because it has been and continues to be used to thwart Appellant's procedural and substantive rights across four courts. *See* Appellant's Resp. to Appellees' Motion to Dismiss for Want of Jurisdiction (filed Dec. 13, 2017) at 4-9. In making that showing, Appellant provided and asked the Court to take judicial notice of several filings in the duplicative West Virginia proceeding initiated by Appellees. *Id.*

Since Appellant filed that response in this Court, a new brief by Appellees was submitted to the West Virginia Supreme Court, which we attach to this letter as Appendix A. In that brief, Appellee Connie Barry argues that the Texas sanctions order demonstrates that ***all*** of Cortez's substantive claims were found frivolous (which is incorrect), and that the Texas sanctions order supports affirmation of the West Virginia trial court's adverse rulings against Cortez. App. A at 5-7, 13, 15, 17. Barry further argues that the issues decided in the sanctions order are *res judicata*, despite the taking of this appeal, and are entitled to full faith and credit to defeat Cortez's procedural and substantive arguments in the West Virginia courts. App. A at 7.

This subsequent filing by Appellees further supports Appellant's position that he has standing to challenge the sanctions order in this Court and further demonstrates that this issue is inappropriate for summary dismissal before briefing. We respectfully ask the Court to take judicial notice of this brief under Rule 201(b)(2). Please provide this letter and attachment to the motion panel.

If you have any questions, please do not hesitate to contact me.

Respectfully,

**Shawn M. Brotherton**

SMB/dj

Attachment

## CERTIFICATE OF SERVICE

On this 5th day of January, 2018, I hereby certify that a true and correct copy of the foregoing response letter has been sent to all counsel of record pursuant to the Rules.

Amanda G. Taylor
Beck Redden LLP
515 Congress Avenue, Suite 1900
Austin, TX 78701

*Attorney for Appellees*

Craig Hopper
Brian T. Thompson
Claire D. East
400 W. 15th Street, Suite 408
Austin, TX 78701

*Attorneys for Third Party Defendants Linda Lou Marks Murray, individually; Charlene Rae Flesher Johnston; Charlotte Fae Flesher Ash; Sandra Kay Flesher Brown; Thomas Wayne Marks; James Berl Marks; Betty J. Webb; Patricia A. Chapman; Lisa A. Smith; Charles Bruce Roberts, Jr., Virginia Ann Roberts Villers; Randall Wayne Davis; Sherry Lynn Whited Salsbury; Terry Lee Whited; Michael Ray Whited; Donald Leaman Whited; and Connie Lou Keith Barry*

Shawn M. Brotherton

# Appendix A

IN THE

# SUPREME COURT OF APPEALS
# OF WEST VIRGINIA

MATEO CORTEZ, individually and as representative of the Estate of Deborah Cortez,

**Petitioner,**

**vs.**

**LINDA LOU MURRAY,** in her capacity as successor trustee of the William D. Short and Phyllis D. Short Revocable Living Trust dated April 30, 1991,

**and**

**CONNIE LOU KEITH BARRY; DONALD LEAMAN WHITED; MICHAEL RAY WHITED; SHERRY LYNN WHITED SALSBURY; SHEILA PETTRY, TYWANNA PETTRY,** and **AMANDA PETTRY,** heirs of Teresa Anette Whited Pettrey; **TERRY LEE WHITED; BETTY JO MARKS; CHARLENE RAE FLESHER-JOHNSTON; JAMES BERL MARKS; LINDA LOU MURRAY; LISA ANN RADER SMITH; MAGEN ELIZABETH WHITED; PATRICIA ANN MARKS CHAPMAN; RANDALL WAYNE DAVIS; SANDRA KAY FLESHER BROWN; THOMAS WAYNE MARKS; VIRGINIA ANN ROBERTS VILLERS,**

**Respondents.**

ON APPEAL FROM THE CIRCUIT COURT OF WIRT COUNTY
(CIVIL ACTION NO. 15-C-28)

# BRIEF OF RESPONDENT CONNIE LOU KEITH BARRY

Aaron C. Boone, Esq. (WVSB # 9479)
J. Tyler Mayhew, Esq. (WVSB #11469)
BOWLES RICE LLP
Fifth Floor, United Square
501 Avery Street (Post Office Box 49)
Parkersburg, West Virginia 26102
Telephone: (304) 420-5501
Facsimile: (304) 420-5587
Email: aboone@bowlesrice.com

*Counsel for Respondent Connie Lou Keith Barry*

# TABLE OF CONTENTS

I. STATEMENT OF THE CASE...........................................................................1

    1. The parties reach an agreement that the Trust assets may be distributed "by a final order of a court of competent jurisdiction."...........................................................................1

    2. The Petitioner repeatedly attempts to block the Trustee from obtaining "a final order of a court of competent jurisdiction" directing the distribution of the Trust assets. ...........................................................................4

    3. The Texas court agrees that the Petitioner has no claim to the Trust and sanctions the Petitioner's Texas counsel for filing frivolous claims...........................................................................5

    4. The Petitioner files more vexatious pleadings in West Virginia, and the Circuit Court finally denies the Petitioner's motions and enters a final order declaring the proper distribution of the Trust assets. ...........................................................................6

II. SUMMARY OF ARGUMENT...........................................................................7

III. STATEMENT REGARDING ORAL ARGUMENT...........................................................................9

IV. ARGUMENT...........................................................................9

    A. THE PETITIONER IS NOT A BENEFICIARY OF THE TRUST, AND HIS ARGUMENTS TO THE CONTRARY ARE FRIVOLOUS AND BARRED BY *RES JUDICATA*. ...........................................................................9

        1. The Circuit Court (and the Texas court) correctly determined that the Petitioner has no interest in the Trust or remaining Trust assets, which are to be distributed "One-half (1/2) to the heirs at law of William D. Short" and "One-half (1/2) to the heirs at law of Phyllis D. Short." ...........................................................................10

        2. The Petitioner's argument below that the Trust terminated upon the death of Mrs. Short, and therefore should be distributed to him as "the sole heir of the Estate of Deborah Cortez," is frivolous. ...........................................................................13

        3. The Petitioner's new argument that "the Estate of Deborah Cortez" is an "heir at law" of Mr. and Mrs. Short was waived below and is frivolous. Dead people and their estates are not heirs at law. ...........................................................................15

i

4. The Petitioner's new argument that the Trust lapsed was waived below and is frivolous. The Trust instrument fully provides for the disposition of the Trust assets, and it would be both absurd and in violation of the rules of construction to interpret the Trust as ineffective for its intended purposes. ...................................................................................17

5. The Petitioner's claims to the Trust are also barred by *res judicata.* On December 19, 2016, the Texas court ruled that the Petitioner, in both his personal and representative capacities, is not a beneficiary of the Trust. Under Texas law, that court's ruling is final despite the taking of an appeal, and entitled to full faith and credit from this Court......................21

B. THE TEXAS COURT IS NOT EXERCISING EXCLUSIVE JURISDICTION OVER THE TRUST. THE TRUSTEE'S LAWSUIT IN TEXAS WAS AN *IN PERSONAM* TORT ACTION FOR DAMAGES, AND NOT AN ACTION TO ADMINISTER THE TRUST. THE PETITIONER'S DEFENSE TO THE TRUSTEE'S TORT CLAIMS DID NOT CONVERT THE PROCEEDINGS IN TEXAS INTO A *QUASI IN REM* ACTION TO ADMINISTER THE TRUST. ..................................................................23

1. The *Princess Lida* principle is a narrow exception to the general rule permitting concurrent jurisdiction over parallel lawsuits. It only applies where both courts "must control the property" to grant the relief sought by the parties. It does not apply to tort suits for monetary damages, or to declaratory claims to adjudicate an individual's right to trust property. ....................24

a. The Trustee's tort action in Texas is an *in personam* action only, and does not trigger the *Princess Lida* principle. The relief sought by the Trustee in Texas consisted of monetary damages only and did not include matters regarding the Trust's administration. The Trustee brought those claims in West Virginia, where the Trust is administered and where the Trust res is located. ...............................................26

b. The Petitioner's intervention claim in Texas did not convert those proceedings into a *quasi in rem* action, and did not trigger the *Princess Lida* principle. A declaratory claim to adjudicate an individual's right to trust property is not an *in rem* or *quasi in rem* action. ..................................................27

2.	The cases cited by the Petitioner are distinguishable, and do not apply to the facts before this Court. Both cases involved parallel suits where the relief requested would have directly interfered with the administration of the trusts. ........................................28

C.	THIS COURT PREVIOUSLY CONSIDERED AND REJECTED THE PETITIONER'S *FORUM NON CONVENIENS* ARGUMENTS IN *STATE EX REL. MATEO CORTEZ v. WATERS*, RECORD NO. 16-0428. WEST VIRGINIA WAS AN APPROPRIATE AND CONVENIENT FORUM FOR ADJUDICATING CLAIMS RELATING TO A TRUST ADMINISTERED FROM THIS STATE. ........................................29

D.	THIS COURT PREVIOUSLY CONSIDERED AND REJECTED THE PETITIONER'S COMITY ARGUMENTS IN *STATE EX REL. MATEO CORTEZ v. WATERS*, RECORD NO. 16-0428. WEST VIRGINIA DID NOT HAVE TO DEFER TO THE PROCEEDINGS IN TEXAS. ........................................31

E.	THE CIRCUIT COURT CORRECTLY DENIED THE PETITIONER'S REQUEST TO INTERVENE AS "THE ESTATE OF DEBORAH CORTEZ." ........................................34

F.	THE PETITIONER'S MISCELLANEOUS ARGUMENTS ARE FRIVOLOUS. ........................................38

V.	CONCLUSION ........................................40

# TABLE OF AUTHORITIES

## Cases

*Amstadt v. U.S. Brass Corp.*,
   919 S.W.2d 644 (Tex. 1996)..................................................................22

*Barbiero v. Kaufman*,
   No. 12-6869, 2013 WL 3939526 (E.D. Pa. July 30, 2013) ................................ 25, 28, 29

*Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Sav.*,
   837 S.W.2d 627 (Tex. 1992).................................................................22

*Berger v. Berger*,
   177 W. Va. 58, 350 S.E.2d 685 (1986)........................................................33

*Cessac v. Stevens*,
   127 So.3d 675, 680 (Fla. 1st DCA 2013) .....................................................15

*Commonwealth Trust Co. of Pittsburgh v. Bradford*,
   297 U.S. 613 (1936).....................................................................26, 28

*Florida Recycling Services, Inc. v. Greater Orlando Auto Auction, Inc.*,
   898 So.2d 129 (Fla. 5th DCA 2005) ..........................................................20

*Haney v. Wilcheck*,
   38 F. Supp. 345 (W.D. Va. 1941) ............................................................26

*Hemphill v. Aukamp*,
   164 W. Va. 368, 264 S.E.2d 163 (1980)....................................................11, 14

*In re Gregory's Estate*,
   70 So.2d 903 (Fla. 1954)...................................................................20

*In re Roulston's Estate*,
   142 So.2d 107 (Fla. 2d DCA 1962) ..........................................................20

*Kanawha Banking & Trust Co. v. Gilbert*,
   131 W. Va. 88, 46 S.E.2d 225 (1947).......................................................11

*Kanawha County Public Library Bd. v. Board of Educ. Of County of Kanawha*,
   231 W. Va. 386, 745 S.E.2d 424 (2013)......................................................39

*Kline v. Burke Const. Co.*,
   260 U.S. 226 (1922)........................................................................25

*Knauer v. Barnett*,
   360 So.2d 399 (Fla. 1978)..................................................................39

*Kuhns v. Bank One, Texas, N.A.*,
    No. 03-98-00177-CV, 1999 WL 699813 (Tex. Ct. App. 1999) ........................ 22

*L.F. Dommerich & Co. v. Bress*,
    280 F. Supp. 590, 600 (D.N.J. 1968) ......................................................... 26

*Lewis v. Green*,
    389 So.2d 235 (Fla. 5th DCA 1980) ........................................................... 16

*Mey v. Pep Boys – Manny, Moe & Jack*,
    228 W. Va. 48, 717 S.E.2d 235 (2011) ....................................................... 15

*Morris v. Morris*,
    No. 15-1035, 2016 WL 6678988 (W. Va. Supreme Court, Nov. 14, 2016) ...................... 33

*Ospina-Baraya v. Heiligers*,
    909 So.2d 465 (Fla. 4th DCA 2005) ............................................................ 19

*Painter v. Coleman*,
    211 W. Va. 451, 566 S.E.2d 588 (2002) ....................................................... 20

*Painter v. Peavy*,
    192 W. Va. 189, 451 S.E.2d 755 (1994) ....................................................... 15

*Panama R. Co. v. Vasquez*,
    271 U.S. 557 (1926) ............................................................................. 27

*Pauley v. Bailey*,
    171 W. Va. 651, 301 S.E.2d 608 (1983) ....................................................... 36

*Pennsylvania R. Co. v. Rogers*,
    52 W. Va. 450, 44 S.E. 300 (1903) ............................................................. 34

*Poweridge Unit Owners Ass'n v. Highland Properties, Ltd.*,
    196 W. Va. 692, 474 S.E.2d 872 (1996) ................................................... 38, 40

*Princess Lida of Thurn & Taxis v. Thompson*,
    305 U.S. 456 (1939) .................................................................. 23, 25, 28, 32

*Robinson v. Cabell Huntington Hosp., Inc.*,
    201 W. Va. 455, 498 S.E.2d 27 (1997) ......................................................... 34

*Scurlock Oil Co. v. Smithwick*,
    724 S.W.2d 1 (Tex. 1986) ....................................................................... 22

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) ............................................................................. 27

*State ex rel. Airsquid Ventures, Inc. v. Hummel,*
    236 W. Va. 142, 778 S.E.2d 591 (2015)................................................................. 11

*State ex rel. American Elec. Power Co., Inc. v. Nibert,*
    237 W. Va. 14, 784 S.E.2d 713 (2016)................................................................. 29

*State ex rel. Ball v. Cummings,*
    208 W. Va. 393, 540 S.E.2d 917 (1999)........................................................ 35, 37

*State ex rel. J.C. ex rel. Michelle C. v. Mazzone,*
    235 W. Va. 151, 772 S.E.2d 336 (2015)................................................................. 30

*State ex rel. Lynn v. Eddy,*
    152 W. Va. 345, 163 S.E.2d 472 (1968)........................................................ 21, 32

*State ex rel. Mateo Cortez v. Waters,*
    Record No. 16-0428 (W.Va. Supreme Court) ........................................... 8, 29, 31

*State ex rel. North River Ins. Co. v. Chafin,*
    233 W. Va. 289, 758 S.E.2d 109 (2014)................................................................. 29

*State ex rel. Small v. Clawges,*
    231 W. Va. 301, 745 S.E.2d 192 (2013)................................................................. 25

*United Bank, Inc. v. Blosser,*
    218 W. Va. 378, 624 S.E.2d 815 (2005)................................................................. 23

*Vigliani v. Bank of America, N.A.,*
    189 So.3d 214 (Fla. 2d DCA 2016) ................................................................. 19

*Watson v. St. Petersburg Bank & Trust Co.,*
    146 So.2d 383 (Fla. 2d DCA 1962) ................................................................. 19

*West Virginia Public Employees Ins. Bd. v. Blue Cross Hosp. Service, Inc.,*
    180 W. Va. 177, 375 S.E.2d 809 (1988)................................................................. 36

*Whan v. Hope Natural Gas Co.,*
    81 W. Va. 338, 94 S.E. 365 (1917)................................................................. 34

*Zaleski v. West Virginia Mut. Ins. Co.,*
    224 W. Va. 544, 687 S.E.2d 123 (2009)........................................................ 17, 31

## Statutes

Fla. Stat. § 736.1106(2)........................................................................................ 16, 17

West Virginia Code § 56-1-1a................................................................................ 29, 30

West Virginia Code § 56-1-1a(a)................................................................................ 29

West Virginia Code § 56-6-10.................................................................... 8, 31, 32, 33, 34

**Other Authorities**

Restatement (Third) of Property (Wills & Don. Trans.) § 1.1 cmt. b (1999).............................. 15

Restatement (Third) of Property (Wills & Don. Trans.) § 1.2 (1999).......................................... 16

Restatement (Third) of Property (Wills & Don. Trans.) § 1.2 at cmt. g (1999).......................... 17

Restatement (Third) of Property (Wills & Don. Trans.) § 11.3 cmt. i (2003)............................. 20

Restatement (Third) of Trusts § 94 (2012) .................................................................... 8, 23

Tex. Civ. Prac. & Rem. Code Title 6, Chapter 134 ................................................................ 26

**Rules**

West Virginia Rule of Civil Procedure 12(h) ....................................................................... 31

West Virginia Rule of Civil Procedure 12(h)(2)................................................................... 34

West Virginia Rule of Civil Procedure 24................................................................ 34, 35, 36

West Virginia Rule of Civil Procedure 24(a)(2)................................................................... 35

West Virginia Rule of Civil Procedure 56............................................................................ 38

West Virginia Rule of Civil Procedure 56(f)........................................................................ 39

West Virginia Rule of Professional Conduct § 1.7............................................................... 37

**Treatises**

90 C.J.S. *Trusts* § 207 ................................................................................................... 20

F. Cleckley, R. Davis, & L. Palmer, *Litigation Handbook on West Virginia Rules
of Civil Procedure* at § 12(h)(2)[2], pp. 418-19 (4th Ed. 2012) ........................................ 35

## I. STATEMENT OF THE CASE

This case involves the final distribution of the assets of the "Second Amendment and Restatement of the William D. Short and Phyllis D. Short Revocable Living Trust" (the "Trust"). William D. Short ("Mr. Short") and Phyllis D. Short ("Mrs. Short") are originally from West Virginia, and their Trust is currently administered from West Virginia by Linda Murray (the "Trustee"), who was Mrs. Short's niece and who is domiciled in West Virginia. The Trust assets consist of West Virginia real estate (specifically oil and gas rights) and cash located in a Trust account held by a West Virginia bank. Per the terms of the Trust instrument, Mr. and Mrs. Short intended to provide for themselves during their lifetimes and for their daughter, Deborah Cortez, during her lifetime following their deaths,[1] after which any remaining Trust assets are to be distributed under Article VIII, Section C of the Trust as follows: "1. One-half (1/2) to the heirs at law of William D. Short; and 2. One-half (1/2) to the heirs at law of Phyllis D. Short." App. at 113. The majority of the heirs at law of Mr. and Mrs. Short reside in West Virginia.

### 1. The parties reach an agreement that the Trust assets may be distributed "by a final order of a court of competent jurisdiction."

Deborah Cortez was the sole child of Mr. and Mrs. Short and lived in Texas with her husband, Mateo Cortez (the "Petitioner"). On December 9, 2011, Deborah Cortez died, survived by the Petitioner and no siblings or descendants. App. at 133. On February 23, 2012, the Petitioner filed a Small Estate Affidavit, confirming that he was the sole heir of the Estate of Deborah Cortez, and that the estate had less than $50,000 in assets. App. at 133-36. The Petitioner knew about the Trust at the time he filed the small estate affidavit, and in fact provided the Trustee with a copy of the Trust instrument the week before. App. 107.

---

[1] It is undisputed that Mr. and Mrs. Short predeceased Deborah.

Prior to her death, Deborah served as co-trustee of the Trust, along with the current Trustee. App. at 113. After Deborah died, the Trustee discovered evidence that the Petitioner and Deborah had been stealing money from the Trust by writing checks to themselves without the knowledge or consent of the Trustee. App. at 84-85. Some of the checks bore the forged signature of Mrs. Short. App at 84. In light of this discovery, on August 28, 2014, the Trustee filed a lawsuit against the Petitioner in the Probate Court of Travis County, Texas, seeking monetary damages for civil conspiracy, statutory violations of the Texas Theft Liability Act, and common law conversion. App. at 81-91. The Trustee's complaint sought monetary damages only, and did not ask the Texas court to decide any matter regarding the Trust's administration or management. App. at 90.

On October 13, 2014, the Petitioner filed his answer to the Trustee's tort claims, but did not allege that he or the Estate of Deborah Cortez were beneficiaries of the Trust or entitled to any of the Trust assets. App. at 2614. The Petitioner also did not ask the Texas court to take any action regarding the Trust's administration or management. *Id.* On March 16, 2015, the Petitioner filed an amended answer to the Trustee's complaint; again, the Petitioner did not allege that he or the Estate of Deborah Cortez had a claim to the Trust, or that the Texas court should take any action regarding the Trust's administration or management. App. at 2617-20. At no point during this time did the Petitioner claim an interest in the Trust or show interest in the Trust's administration.

On June 19, 2015, the Petitioner's Texas counsel deposed the Trustee. App. at 2709-11. This deposition was the first time that the Petitioner or his Texas counsel inquired about the value of the Trust, which at that time contained approximately $5.2 million in assets. The Petitioner immediately terminated the deposition, and within days he filed his "Original Petition in Intervention," arguing (for the first time, ever) that Deborah Cortez was the sole beneficiary of the Trust and therefore the Petitioner was entitled to all of the Trust Assets. App. at 92-97.

2

On November 20, 2015, the Trustee filed her complaint in the Circuit Court of Wirt County, West Virginia, asking the Circuit Court "enter an order directing the distribution of the assets of the Trust to those persons determined by this court to be entitled to receive the same in such proportions as may be determined by this court to be proper and in conformity with the intent of the settlors of the Trust." App. at 11-33. The Petitioner then sought a restraining order in Texas, seeking to bar the Trustee from taking any further action in West Virginia to administer the Trust or distribute its assets.

At a hearing on December 18, 2016, the Texas court entered a temporary restraining order preventing the Trustee from temporarily distributing the Trust assets, but refused to prohibit the Trustee from moving forward in West Virginia:

> THE [TEXAS] COURT: I'm not going to prohibit them from proceeding, I'm not going order them to dismiss in West Virginia. You all can go to West Virginia and argue.
>
> [PETITIONER'S COUNSEL]: The problem is of course, Your Honor, is our guy has limited funds and --
>
> THE [TEXAS] COURT: But he's got good lawyers, so – who are looking at an opportunity if you're right of getting five million dollars.

App. at 1464.

After the Texas court refused to enjoin the Trustee from prosecuting her claims in West Virginia, the Petitioner feared that the Trustee might distribute Trust assets after the temporary restraining order expired but before the court could rule on his intervention claim to the Trust. Rather than waste additional time and money fighting the Petitioner's request for a temporary injunction, the Trustee and the Petitioner entered into the following agreement:

> There is now pending an Application for Injunctive Relief filed by Cortez. In lieu of a contested hearing, the parties agree that none of the assets of the William D. Short and Phyllis D. Short Revocable Trust including the Credit Shelter Trust will be distributed to a

3

beneficiary *except as may be permitted by a final order of a court of competent jurisdiction.*

App. at 236 (emphasis added). Since entering into this agreement, the Petitioner has repeatedly attempted to delay or obstruct these proceedings because the Petitioner knows that the Circuit Court of Wirt County, West Virginia is the only court that has been asked to "enter an order directing the distribution of the assets of the Trust to those persons determined ... to be entitled to ... the same in such proportions as may ... be proper."

2.     **The Petitioner repeatedly attempts to block the Trustee from obtaining "a final order of a court of competent jurisdiction" directing the distribution of the Trust assets.**

On December 28, 2015, the Petitioner moved to dismiss this action for *forum non conveniens*, arguing that the case should be dismissed and litigated in Texas. App. at 60-74. The Circuit Court denied the Petitioner's motion, finding that this action was properly filed in West Virginia. App. at 462-71.

On April 11, 2016, Respondent Barry filed a motion for partial summary judgment, seeking a declaration that the Petitioner is not a legal beneficiary of the Trust and is not entitled to share in the distribution of the Trust assets. App. at 530-34. However, on April 29, 2016, before the Circuit Court could rule on Respondent Barry's motion, the Petitioner filed a petition for a writ of prohibition, seeking to prohibit the Circuit Court from denying his motion to dismiss. App. at 1837-84. This Court and the Circuit Court both refused to stay further proceedings pending the outcome of the Petitioner's writ petition. On June 14, 2016, this Court summarily refused the Petitioner's petition for a writ of prohibition. App. at 1886-87.

On September 16, 2016, the Circuit Court entered an order granting Respondent Barry's motion for partial summary judgment, finding that the Petitioner is not entitled to take under the Trust and dismissing him from this action with prejudice. App. at 674-82. The Circuit Court

4

found that it was undisputed that "the Trust expresses the true intent of the settlors, Mr. and Mrs. Short, in plain and unambiguous language," and that it was also undisputed "that Mateo Cortez was not a surviving spouse of, nor a lineal or collateral descendant of, Mr. or Mrs. Short." App. at 679-70. Applying the plain language of the Trust instrument, and after examining the document as a whole, the Circuit Court concluded that Mr. and Mrs. Short did not intend to provide for the Petitioner under the Trust and did not intend for him to share in the Trust assets. App. at 679-81.

On September 21, 2016, given that the Circuit Court dismissed the Petitioner's competing claim to the Trust, the Trustee filed her own motion for summary judgment, seeking a final order declaring the distributive interests of the remaining parties. App. at 706-24. The Petitioner subsequently filed a motion to alter or amend, which automatically stayed his obligation to appeal the Circuit Court's summary judgment to this Court. App. at 728-43. The Trustee's motion for summary judgment and the Petitioner's motion to alter or amend were noticed for hearing on November 3, 2016. App. at 703 & 758.

One week before the Circuit Court's hearing, on October 24, 2016, the Petitioner attempted to remove this case to the United States District Court for the Southern District of West Virginia, App. at 762-66, and filed a successive motion to dismiss in federal court. App. at 1271-74. The Trustee and Respondent Barry promptly moved to remand the case, but the federal court did not grant their motions to remand until six months later, on April 10, 2017. App. at 1980-93.

**3.    The Texas court agrees that the Petitioner has no claim to the Trust and sanctions the Petitioner's Texas counsel for filing frivolous claims.**

While the proceedings in West Virginia were being held up in federal court, the heirs at law of Mr. and Mrs. Short filed a motion for partial summary judgment in Texas, asking that court

5

to also find that the Petitioner was not a beneficiary of the Trust.[2] App. at 1649-61. On December 19, 2016, the Texas court agreed and granted the heirs' motion, finding that the Petitioner was not a beneficiary of the Trust and dismissing "any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez, has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust." App. at 1957-58. Subsequently, on February 10, 2017, the Texas court amended its order and final judgment to sanction the Petitioner's Texas lawyers for filing frivolous claims to the Trust. App. at 1969-73. Specifically, the Texas court found that the Petitioner's lawyers should have known, as of September 16, 2016 (the date of the Circuit Court's order in West Virginia), that his claims to the Trust were untenable. App. at 1970.

Thereafter, Respondent Barry sent a letter asking the Petitioner to discontinue his frivolous pursuit of the Trust assets. App. at 2743-47. The Petitioner rejected this request on March 1, 2017, suggesting that the West Virginia and Texas courts' orders were "riddled with errors and inaccuracies." App. at 2748-49. The Petitioner later filed an appeal in Texas, diminishing any hope that the Petitioner would honor the parties' agreement.

4. **The Petitioner files more vexatious pleadings in West Virginia, and the Circuit Court finally denies the Petitioner's motions and enters a final order declaring the proper distribution of the Trust assets.**

Immediately after the federal court remanded this case to Wirt County, on April 20, 2017, the Trustee re-noticed her previously-filed summary judgment motion, and Respondent Barry re-noticed the Petitioner's motion to alter or amend. Both motions were noticed for hearing on June 27, 2017. App. at 2027 & 2030. Two weeks before the hearing, the Petitioner filed yet more

---

[2] The heirs at law made clear at the summary judgment hearing in Texas that they were not waiving their right to proceed in West Virginia. Rather, the heirs made clear that they trusted the Texas court to reach the same conclusion as the Circuit Court in West Virginia. The heirs hoped that the Petitioner would honor the Texas court's ruling and save the parties significant additional time and expense.

6

motions, this time a motion to intervene "on behalf of the Estate of Deborah Cortez" and another post-judgment motion to dismiss. App. at 2034-49 & 2145-64. The Petitioner noticed his motions for June 27, 2017, App. at 2333, and then sent a letter requesting that the Trustee again "reschedule the motion for summary judgment [until] after the court has ruled on our motions." App. at 2624. The Trustee and Respondent Barry declined the Petitioner's request.

At the hearing on June 27, 2017, the Circuit Court verbally denied all of the Petitioner's motions and directed Respondent Barry to prepare proposed orders containing findings of fact and conclusions of law in support of the court's rulings. The Circuit Court also granted the Trustee's motion for summary judgment, and entered an order and judgment declaring the rightful beneficiaries of the Trust and their respective distributive interests in the Trust assets. On September 19, 2017, the Circuit Court entered its "Order Denying Defendant Mateo Cortez's Motion to Alter or Amend," "Order Denying Motion to Dismiss," and "Order Denying Motion to Intervene." App. at 309-3137. The Petitioner appealed these three orders to this Court.

## II.    SUMMARY OF ARGUMENT

The Circuit Court's orders and judgment should be affirmed. The Petitioner's claims to the Trust are frivolous, and have already been rejected by two different courts:

1.      On September 15, 2016, the Circuit Court of West Virginia granted partial summary judgment in favor of Respondents, concluding that Mr. and Mrs. Short did not intend for Mateo Cortez or the Estate of Deborah Cortez to share in the Trust assets.

2.      On December 19, 2016, the Probate Court of Travis County, Texas granted summary judgment and dismissed "any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez, has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust." The Texas court also sanctioned the Petitioner's lawyers for asserting frivolous claims to the Trust. Under Texas law, that court's ruling is *res judicata* despite the taking of an appeal, and is entitled to full faith and credit from this Court.

3.      These two courts, the Circuit Court of West Virginia and the Texas court, correctly concluded that the Petitioner has no claim to the Trust. The plain and unambiguous language of the Trust instrument demonstrates that William D. Short and Phyllis D. Short

7

intended to provide for themselves during their lifetimes, and for their daughter Deborah during her lifetime following their deaths, after which any remaining Trust assets are to be distributed to Respondent Barry and the other respondents as "the heirs at law of William D. Short and Phyllis D. Short." The Petitioner's arguments to the contrary are frivolous, and run contrary not only to the clear intent of the settlors but also basic tenets of construction applicable to wills and trusts.

The Petitioner's other assignments of error are interposed solely to obstruct the Trustee's efforts to make final distribution of the Trust assets to the Trust's rightful beneficiaries. As a threshold matter, the Petitioner lacks standing to interfere with this lawsuit because he has no beneficial interest in the Trust. Restatement (Third) of Trusts § 94 (2012) ("A suit against a trustee of a private trust to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained only by a beneficiary or by a co-trustee, successor trustee, or other person acting on behalf of one or more beneficiaries."). The Petitioner's arguments also fail on their merits:

1.    The *Princess Lida* principle does not bar the Trustee's suit in West Virginia. *Princess Lida* only applies in the narrow set of circumstances where two courts are attempting to exercise *in rem* or *quasi in rem* jurisdiction over the same property. The Trustee's lawsuit in Texas was a tort action for monetary damages, and the Petitioner's intervention claim in that suit was a declaratory action to adjudicate his "right to participate in the *res* or as to his quantum of his interest in it." The *Princess Lida* case explicitly states that these types of claims are *in personam* only, and did not trigger exclusive jurisdiction in the Texas court. The Texas court in fact agreed that this action should proceed in West Virginia: "THE [TEXAS] COURT: I'm not going to prohibit them from proceeding, I'm not going to order them to dismiss in West Virginia. You all can go to West Virginia and argue."

2.    This Court rejected the Petitioner's *forum non conveniens* arguments in *State ex rel. Mateo Cortez v. Waters*, Record No. 16-0428. The Circuit Court did not abuse its discretion in affording great deference to the Trustee's choice of a West Virginia forum to hear claims involving a trust administered from West Virginia by a West Virginia Trustee, affecting fifteen (15) West Virginia residents, the corpus of which consists of West Virginia real estate and funds held in a West Virginia bank.

3.    The Petitioner never asked the Circuit Court to stay this case under W. Va. Code § 56-6-10, and this Court rejected the Petitioner's comity arguments in *State ex rel. Mateo Cortez v. Waters*, Record No. 16-0428. West Virginia is the only forum that has been asked to decide how the Trust assets should be distributed among the Trust's rightful beneficiaries.

4.    The Circuit Court correctly denied the Petitioner's request to intervene as "the Estate of Deborah Cortez." The Petitioner's request to intervene as "the Estate of Deborah Cortez" was untimely, the estate has no interest in the Trust to protect, and the Petitioner adequately

8

represented the estate's interests in this litigation. The real reason the Petitioner sought to intervene as "the Estate of Deborah Cortez" was to hide behind a nominal party to avoid the Circuit Court's judgment, and to reargue in West Virginia the same frivolous legal theories that led to sanctions against his lawyers in Texas.

5.  The Circuit Court properly granted summary judgment in favor of Respondent Barry. There is no formalistic requirement that prevented the Circuit Court from granting summary judgment if the record revealed no genuine issue of material fact and the movant demonstrated an entitlement to judgment as a matter of law. Respondent Barry made the proper showing for summary judgment against the Petitioner. Additionally, "a party may not simply assert in his brief that discovery was necessary and thereby overturn summary judgment." The Petitioner made no showing that discovery was necessary, and in fact admitted that the Trust instrument unambiguously expressed the intent of the settlors.

### III.   STATEMENT REGARDING ORAL ARGUMENT

Respondent Barry believes that oral argument is unnecessary because the appeal is frivolous, the facts and legal arguments are adequately presented in the parties' briefs and the record on appeal, and the decisional process would not be significantly aided by oral argument. *See* W.Va. R. App. P. 18. The Trustee properly filed this action in West Virginia, the Circuit Court correctly decided that the Petitioner has no interest in the Trust, and the Petitioner's assignments of error are without merit under the controlling legal precedents. Respondent Barry therefore requests that the Court dispense with oral argument and issue a memorandum decision affirming the Circuit Court's orders and judgment. *See* W. Va. R. App. P. 21. However, in the event the Petitioner is granted oral argument, Respondent Barry respectfully requests a similar opportunity for oral argument to respond to any facts or arguments raised by the Petitioner before the Court.

### IV.   ARGUMENT

### A.   THE PETITIONER IS NOT A BENEFICIARY OF THE TRUST, AND HIS ARGUMENTS TO THE CONTRARY ARE FRIVOLOUS AND BARRED BY *RES JUDICATA*.

Irrespective of whether he acts individually or "as representative of the Estate of Deborah Cortez," the Petitioner has no legitimate claim to his in-laws' Trust or its assets. The plain and unambiguous language of the Trust instrument is crystal clear: Mr. and Mrs. Short intended to

9

provide for themselves during their lives and for their daughter Deborah during her life, after which Mr. and Mrs. Short intended that any remaining Trust assets be distributed to their heirs at law. App. at 109-22. It cannot be disputed – and the Petitioner conceded below – that the Petitioner is not an heir at law of either Mr. or Mrs. Short. App. at 569. Accordingly, the Circuit Court in this case and the probate court in Texas *both* concluded that the Petitioner is not a beneficiary of the Trust and have both entered judgment against the Petitioner in his individual and representative capacities. App. at 674-82, 1957-58. Nonetheless, the Petitioner continues to claim that he is the sole beneficiary of the Trust, and has made every effort to obstruct the proceedings in both West Virginia and Texas by continuously filing frivolous pleadings and motions. The plain and unambiguous language of the Trust instrument demonstrates that the Petitioner has no interest in the Trust, and that Mr. and Mrs. Short specifically intended to exclude him as a beneficiary.

1. **The Circuit Court (and the Texas court) correctly determined that the Petitioner has no interest in the Trust or remaining Trust assets, which are to be distributed "One-half (1/2) to the heirs at law of William D. Short" and "One-half (1/2) to the heirs at law of Phyllis D. Short."**

The Circuit Court correctly determined that Mr. and Mrs. Short intended that the remaining Trust assets be distributed to Respondent Barry and the other relatives of Mr. and Mrs. Short, and not to the Petitioner. "The polestar of trust interpretation is the settlor's intent. If the trust language is unambiguous, the settlors' intent as expressed in the trust controls and the court cannot resort to extrinsic evidence. In determining the settlors' intent, the court should not 'resort to isolated words and phrases'; instead, the court should construe 'the instrument as a whole,' taking into account the general dispositional scheme." *Roberts v. Sarros*, 920 So.2d 193, 195 (Fla. 2d DCA 2006) (internal citations omitted).[3] It is undisputed that the "Second Amendment and Restatement of the

---

[3] The Petitioner argues on appeal that the Trust should be interpreted under Florida law. Pet'r Br. at 33-35. The Circuit Court declined to address which state's substantive law applied, finding that its conclusion was the same regardless of the choice of law. App. at 680. West Virginia's rules of trust interpretation are the same as Florida's,

10

William D. Short and Phyllis D. Short Revocable Living Trust dated April 30, 1991" is the controlling Trust instrument, and that the document expresses the true intent of the settlors in plain and unambiguous language. App. at 109-22, 569. Accordingly, the settlors' intent was solely a question of law to be decided from the terms of the Trust instrument.

Article V of the Trust instrument governed how the Trust was to be administered during the lives of the settlors. App. at 110. The Trust assets were divided and managed as two separate shares, one for the benefit of Mr. Short and the other for Mrs. Short. *Id.* Upon Mr. Short's death (the first settlor to die), under Article VI his share of the Trust was used to pay expenses and taxes on his estate, a portion (up to the maximum estate tax deduction) was added to Mrs. Short's share of the Trust, and the remainder was administered as a credit shelter trust for the benefit of Mrs. Short during her life. App. at 110-11. Upon Mrs. Short's death, under Article VII her share of the Trust was used to pay expenses and taxes on her estate; although Article VII, Section B permitted Mrs. Short to make testamentary dispositions of Mr. Short's credit shelter trust, no such dispositions were included in her will. App. at 112, 1681-85. The remainder of Mr. Short's credit shelter trust and Mrs. Short's share of the Trust were then consolidated and administered "as if it were a single trust" under Article VIII. App. at 112.

Article VIII contains a series of instructions for the trustee to administer the Trust after the death of both settlors. Section A, entitled "Specific Distributions," contains just that – a series of

---

so there was no conflict for the Circuit Court to resolve. *Cf.* Syl. Pts. 1 & 2, *Hemphill v. Aukamp*, 164 W. Va. 368, 264 S.E.2d 163 (1980) ("The paramount principle in construing or giving effect to a trust is that the intention of the settlor prevails, unless it is contrary to some positive rule of law or principle of public policy" and "In ascertaining the intent of the settlor, the entire trust document should be considered."); Syl. Pt. 3, *Kanawha Banking & Trust Co. v. Gilbert*, 131 W. Va. 88, 46 S.E.2d 225 (1947) ("When a written contract is clear and unambiguous its meaning and legal effect must be determined solely from its contents and it will be given full force and effect according to its plain terms and provisions. Extrinsic evidence of the parties to such contract, or of other persons, as to its meaning and effect will not be considered."). Nonetheless, in addressing the Petitioner's arguments to this Court, Respondent Barry will likewise refer to Florida substantive law and West Virginia procedure. *See* Syl., in part, *State ex rel. Airsquid Ventures, Inc. v. Hummel*, 236 W. Va. 142, 778 S.E.2d 591 (2015) ("The procedural laws of this state necessarily apply to matters that are brought in the courts of West Virginia.").

11

"specific distributions of cash" to three churches and to Deborah Cortez, if she was living and legally competent. App. at 112. Because Deborah survived Mrs. Short, the remaining Trust assets were then administered under Section B, as a "Continuing Trust for Deborah" during Deborah's lifetime. App. at 112-13. All three subsections of Section B make clear that the continuing trust for Deborah existed only "during Deborah's life." *Id.* Upon Deborah's death, the remaining Trust assets were to be distributed under Section C as follows: "1. One-half (1/2) to the heirs at law of William D. Short; and 2. One-half (1/2) to the heirs at law of Phyllis D. Short." App. at 113.

As detailed above, the plain and unambiguous language of the Trust instrument states that Mr. and Mrs. Short intended to provide for themselves during their lifetimes, and for their daughter Deborah during her lifetime following their deaths, after which any remaining Trust assets were to be distributed under Article VIII, Section C of the Trust as follows: "1. One-half (1/2) to the heirs at law of William D. Short; and 2. One-half (1/2) to the heirs at law of Phyllis D. Short." App. at 113. The Petitioner conceded below that he is not an heir at law of either Mr. or Mrs. Short. App. at 569. Moreover, it is black-letter law that [s]pouses of the decedent's blood or adopted relatives, *such as* daughters-in-law and *sons-in-law*, are relatives by affinity. The intestacy statutes, including the UPC, exclude them from inheriting." Restatement (Third) of Property (Wills & Don. Trans.) § 2.4 cmt. g (1999) (emphasis added). The Circuit Court therefore correctly found (as did the Texas court) that the Petitioner is not a beneficiary of the Trust and is not entitled to share in the Trust assets. App. at 681-82.

The Circuit Court's finding is further supported by other information evident from the face of the Trust instrument. First, the Trust never mentions the Petitioner as a beneficiary. *Cf.* App. at 109-22. In fact, the only individuals, other than the settlors, that are named as beneficiaries of the Trust are "Deborah A. Cortez," "the heirs at law of William D. Short," and "the heirs at law of

12

Phyllis D. Short." App. at 112-13. Second, the settlors knew their daughter Deborah was married to the Petitioner because she is referred to throughout the Trust instrument by her married name, "Deborah A. Cortez." App. at 109, 112-13. If the settlors intended for the Petitioner to possess any interest in the Trust, then they would have named him as a beneficiary, named "the heirs at law of Deborah A. Cortez" as a beneficiary, or otherwise provided for a distribution scheme in which he would take an interest in the Trust upon final distribution. The settlors' obvious knowledge that the Petitioner was Deborah's husband, coupled with their conscious decision to omit him as either a direct or contingent beneficiary of the Trust, is clear and incontrovertible proof that the Petitioner has no interest in the Trust and was never intended to have an interest in the Trust. The Circuit Court (and the Texas court) therefore correctly granted summary judgment against the Petitioner, and its decision should be affirmed.

2.      **The Petitioner's argument below that the Trust terminated upon the death of Mrs. Short, and therefore should be distributed to him as "the sole heir of the Estate of Deborah Cortez," is frivolous.**

Prior to the Circuit Court entering judgment against him, the Petitioner presented only one theory to support his claim to the Trust assets. The Petitioner claimed that he is the sole beneficiary of the Trust due to the language in Article VIII, Section D, which applies "[i]f any beneficiary is under the age of thirty-five (35) years at the time he or she becomes entitled to distribution ...." App. at 113, 569-70. The Petitioner specifically relied on the language of Article VIII, Section D.2, which states that, "when such beneficiary reaches the age of thirty-five (35) years, the balance of his or her trust share, including both principal and any accrued and undistributed income, shall be distributed to that beneficiary." App. at 113, 570. According to the Petitioner, because Deborah was over the age of 35 when Mrs. Short died, "the Trust terminated by its own terms" under Article VIII, Section D.2, all of the Trust assets should have "vested" in Deborah during her life, and the

13

Petitioner therefore inherited the entirety of the Trust assets as "the sole heir of the Estate of Deborah Cortez." App. at 570-71.

The Circuit Court was required to ascertain the settlors' intent from the Trust instrument as a whole, and not through a strained reading of "isolated words and phrases." *Roberts v. Sarros*, 920 So.2d 193, 195 (Fla. 2d DCA 2006).[4] The plain language of Article VIII, Section D only applies if "any beneficiary is under the age of thirty-five (35) years at the time he or she becomes entitled to distribution." App. at 113. At the time the Trust instrument was executed, Deborah was already 43 years old. *Compare* App. at 119 (stating that the Trust was executed on January 5, 2000) to App. at 175 (stating that Deborah Cortez died on December 9, 2011 at the age of 54). Further, Deborah was not "entitled to distribution" until Mrs. Short died, at which time Deborah was 54 years old. App. at 175.

In order to accept the Petitioner's reading of the Trust, the Circuit Court would have been required to find that the settlors did not know the age of their own daughter, and would also have been required to read Article VIII, Sections A-C out of the Trust instrument. Indeed, if the settlors intended for the Trust to terminate and its assets distributed to Deborah Cortez upon their deaths, the Trust instrument would have simply said so, instead of creating a "Continuing Trust for Deborah" during her lifetime. It is clear that Section D was not intended to apply to the trust created for Deborah, but instead to the alternate distribution to the "heirs at law" of Mr. and Mrs. Short if any of those heirs happened to be under the age of 35 at the time of distribution. The Petitioner's reading of the Trust was plainly absurd and would have vitiated the settlors' intent.

---

[4] *Cf.* Syl. Pt. 2, *Hemphill v. Aukamp*, 164 W. Va. 368, 264 S.E.2d 163 (1980) ("In ascertaining the intent of the settlor, the entire trust document should be considered").

14

**3. The Petitioner's new argument that "the Estate of Deborah Cortez" is an "heir at law" of Mr. and Mrs. Short was waived below and is frivolous. Dead people and their estates are not heirs at law.**

The Petitioner now claims that "the Estate of Deborah Cortez" is a beneficiary of the Trust because, under Florida intestacy law, Mrs. Short was the heir at law of Mr. Short when he died, and Deborah Cortez was the heir at law of Mrs. Short when she died. Pet'r Br. at 33-35. The Petitioner first raised this interpretation of the Trust through a post-judgment Rule 59(e) motion, App. at 733-34, and therefore waived it below. *See East Sussex Children Services v. Morris*, No. 3:12-CV-141, 2013 WL 704660, at *3 (N.D.W. Va. Feb. 27, 2013) ("A Rule 59(e) motion is not intended to allow for reargument of the very issues that the court has previously decided ... nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.").[5] The Petitioner's argument is also nonsense, and intentionally misleading.

According to the Petitioner's logic, "Deborah Cortez would have been entitled to the entire estate under Florida's intestate succession statute and, therefore, she is the sole heir, and her right vested on the date of Phyllis Short's death." Pet'r Br. at 34. That sounds legitimate, except for the fact that the Trust assets were not part of "the estate" of Phyllis Short when she died, and did not "vest" in anyone except in accordance with the terms of the Trust instrument. *Cessac v. Stevens*, 127 So.3d 675, 680 (Fla. 1st DCA 2013) (rejecting argument that trust assets were part of the decedent's estate, and holding that property held in trust must pass as directed in the trust instrument).[6] *See also* Restatement (Third) of Property (Wills & Don. Trans.) § 1.1 cmt. b (1999)

---

[5] "Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases ... in determining the meaning and scope of our rules." *Painter v. Peavy*, 192 W. Va. 189, 192 n.6, 451 S.E.2d 755, 758 n.6 (1994) (citations omitted). *Cf. Mey v. Pep Boys -- Manny, Moe & Jack*, 228 W. Va. 48, 57, 717 S.E.2d 235, 244 (2011) (citing federal cases as to the meaning and scope of Rule 59(e), and observing in footnote ten that the only difference between the West Virginia and federal rule is the time period to file a motion.).

[6] Mr. and Mrs. Short also died testate, so their estates did not pass by intestacy but instead poured back into the Trust for administration. App. at 1676-85.

15

(explaining that property held in trust is not part of a decedent's probated estate). Under Florida trust law, "[a] person's right to share in the distribution of the corpus of the trust depends on his surviving until the trust terminates, and being within the class of persons described by the testator as persons eligible to take the corpus." *Lewis v. Green*, 389 So.2d 235, 243 (Fla. 5th DCA 1980). *See also* Fla. Stat. § 736.1106(2) ("A future interest under the terms of a trust is contingent upon the beneficiary surviving the distribution date."). As already discussed above, the Trust did not terminate or "vest" in Deborah Cortez upon the death of Mrs. Short. Rather, the remaining Trust assets were administered under Article VIII, Section B as a continuing trust for Deborah "during Deborah's life." App. at 112-13. "[U]pon Deborah's death," her interest in the Trust extinguished, and the remaining Trust assets are to be distributed under Section C to the heirs at law of Mr. and Mrs. Short then living at the time of Deborah's death.

Implicit in the Petitioner's argument is the bizarre idea that "the Estate of Deborah Cortez" is somehow an "heir at law" of Mr. or Mrs. Short. It is axiomatic that a dead person's estate is not an "heir at law" of a decedent. *See* Restatement (Third) of Property (Wills & Don. Trans.) § 1.2 (1999) ("An individual who fails to survive the decedent cannot take as an heir or a devisee."). *See also Lewis v. Green*, 389 So.2d 235, 243 (Fla. 5th DCA 1980) ("A person's right to share in the distribution of the corpus of the trust depends on his surviving until the trust terminates, and being within the class of persons described by the testator as persons eligible to take the corpus."). A decedent's "heirs at law" are his or her living descendants on the date their right to distribution vests. This is a basic and elementary concept of descent and distribution, and it is explicitly built into the Florida trust code:

> A future interest under the terms of a trust is contingent upon the beneficiary surviving the distribution date. Unless a contrary intent appears in the trust instrument, if a beneficiary of a future interest under the terms of a trust fails to survive the distribution date, and

16

the deceased beneficiary leaves surviving descendants, a substitute gift is created in the beneficiary's surviving descendants. They take per stirpes the property to which the beneficiary would have been entitled if the beneficiary had survived the distribution date.

Fla. Stat. § 736.1106(2). The only exception is when a will or trust directly makes a disposition to an "estate" or "executor" of a deceased person. Restatement (Third) of Property (Wills & Don. Trans.) § 1.2 at cmt. g (1999) ("Although an individual who fails to survive the decedent cannot take as a devisee, a devise to the 'estate' or to the 'executor' of a deceased person is valid."). The Trust instrument obviously makes no provision for "the Estate of Deborah Cortez" or its executor. *Cf.* App. at 109-22. Indeed, the Trust only provides for Deborah "during her life." App. at 112-13. The settlors obviously intended that "the heirs at law of William D. Short" and "the heirs at law of Phyllis D. Short" be determined as of the date of Deborah's death, when the Trust terminated and any remaining assets distributed.

**4.     The Petitioner's new argument that the Trust lapsed was waived below and is frivolous. The Trust instrument fully provides for the disposition of the Trust assets, and it would be both absurd and in violation of the rules of construction to interpret the Trust as ineffective for its intended purposes.**

Alternatively, the Petitioner now wants to argue that the Trust *lapsed* **and** that Mrs. Short failed to dispose of her estate through her will, and therefore the Trust assets should have passed by intestacy to Deborah Cortez when Mrs. Short died. Pet'r Br. at 30-33. In other words, the Petitioner is now asking this Court to find, as a matter of law, that Mr. and Mrs. Short created a detailed estate planning scheme that was ineffective to actually accomplish their expressed intent. The Petitioner failed to raise this argument below and therefore waived it.[7] *See Zaleski v. West Virginia Mut. Ins. Co.*, 224 W. Va. 544, 550, 687 S.E.2d 123, 129 (2009) ("This Court has long

---

[7] Nine months after the Circuit Court granted summary judgment against him, the Petitioner attempted to intervene "on behalf of the Estate of Deborah Cortez" to raise this new theory interpreting the Trust. The Circuit Court correctly declined to allow "the Estate" to intervene. The Circuit Court's reasoning is discussed in more detail in Section V, subsection F, below.

17

held that theories raised for the first time on appeal are not considered."). The Petitioner's argument is also frivolous because it would not only vitiate the clear intent of the settlors as expressed in the Trust instrument, but also violate basic tenets of will and trust construction.

The Petitioner points to a single sentence in Article VIII, Section A of the Trust that he claims invalidates the remaining provisions of the Trust instrument. Article VIII, Section A sets forth a list of "specific distributions of cash," including a one-time distribution to Deborah Cortez:

> 2. Cash Distribution to Deborah. If our daughter, DEBORAH A. CORTEZ, is living and legally competent, the trustee shall distribute to her the sum of fifty thousand dollars $50,000.00, as soon as practicable after the death of the second one of us to die. If Deborah is not then living or is not legally competent, then this gift shall lapse, and the remainder of the trust estate shall be administered as provided below.

App. at 112. The Petitioner argues that the second sentence of this paragraph dictates that "none of the successive administrative steps [under Article VIII] are to be taken unless Deborah was either deceased or incompetent at the time of her second parent's death." Pet'r Br. at 32. Because Deborah was living and competent when Mrs. Short died, the Petitioner asks this Court to ignore the remainder of Article VIII and find that "the Trust fails to dispose of the entire estate." Pet'r Br. at 33. The Petitioner *also* asks this Court to find that Mrs. Short's will "fails to dispose of the entire estate of Phyllis Short" because it devises her residuary estate back to a lapsed Trust. Pet'r Br. at 33. The Petitioner therefore asks this Court to invalidate Mrs. Shorts' entire estate plan, and find that the Trust assets passed *through intestacy* to Deborah Short upon Mrs. Short's death, and ultimately to him as "the sole heir of the Estate of Deborah Cortez."

The Petitioner's argument is absurd, and twists an isolated phrase from one sentence of the Trust instrument in a way that defeats the clear intent and entire estate plan of the settlors:

> To determine the settlors' intent, the court should construe the instrument **as a whole**, taking into account the general dispositional scheme. It should not resort to isolated words and phrases. This is

18

true whether the court is interpreting the entire trust or only a specific clause.

*Vigliani v. Bank of America, N.A.*, 189 So.3d 214, 219 (Fla. 2d DCA 2016) (internal citations and quotations omitted) (emphasis added). "Furthermore, a court must construe a [trust instrument] in a manner that accords with reason and probability; and avoid an absurd construction." *Ospina-Baraya v. Heiligers*, 909 So.2d 465, 472 (Fla. 4th DCA 2005).[8] By its terms, the second sentence of Article VIII, Section A.2 of the Trust instrument pertains solely to whether the "specific distribution of cash" to Deborah under that paragraph lapses, and was not a "condition" to administering the Trust under the remaining sections. Rather, as stated in Section B, the only "condition" for administering the Trust as a "Continuing Trust for Deborah" was that she be "living on the date of the death of the second one of us to die." App. at 112. Similarly, as stated in Section C, the only "condition" for the "Alternate Distribution" to the heirs at law of Mr. and Mrs. Short was that "assets of the trust remain undistributed upon Deborah's death, or if she fails to survive us." App. at 113. The overall distributional scheme of the Trust is obvious: under Article VIII, after the trustee makes certain "specified distributions of cash" under Section A, if Deborah survived the settlors then the Trust assets were to be administered under Section B as a "Continuing Trust for Deborah" during her life, and upon her death any remaining assets were to be distributed under Section C to Respondent Barry and others as the heirs at law of Mr. and Mrs. Short.

The Petitioner's argument is also in direct conflict with other language in the Trust instrument. "If the provisions of a contract are unambiguous, courts may not violate the clear meaning of the words in order to create an ambiguity, and certainly may not rewrite the contract." *Florida Recycling Services, Inc. v. Greater Orlando Auto Auction, Inc.*, 898 So.2d 129, 131

---

[8] "The general rules of construction of written instruments apply to the construction of trust instruments." *Watson v. St. Petersburg Bank & Trust Co.*, 146 So.2d 383, 385 (Fla. 2d DCA 1962).

19

(Fla. 5th DCA 2005). The Petitioner claims that Article VIII, Sections B-D do not apply "unless Deborah was either deceased or incompetent," Pet'r Br. at 32, but Section B.1 states that the trustee "shall distribute *to her, or on her behalf if she becomes incapacitated,*" the net income of the continuing trust established under that section. App. at 112 (emphasis added). Similarly, Section B.2 gave Deborah the annual right to "withdraw up to $25,000.00 of the principal of the trust," which she would be unable to do if she was incompetent. *Id.* In other words, Section B was not dependent on Deborah's competency – the settlors intended to create a "Continuing Trust for Deborah" under that section so long as she was "living on the date of the death of the second one of us to die." Reading the Trust instrument as the Petitioner suggests would require the Court to create an ambiguity in the document, which is impermissible.

Finally, the Petitioner's argument also violates basic tenets of construction. "It is initially presumed that a testator intended to dispose of his entire estate." *In re Roulston's Estate,* 142 So.2d 107, 110 (Fla. 2d DCA 1962).[9] "Intestacies are not favored in construing wills. If the terms of a will are such as to permit two constructions, one of which results in intestacy and the other of which leads to a valid testamentary disposition, the construction is preferred which will prevent intestacy." *In re Gregory's Estate,* 70 So.2d 903, 907 (Fla. 1954).[10] The same constructional preference applies to trust instruments. *See* 90 C.J.S. *Trusts* § 207 ("[T]he rules of construction used with respect to wills apply to the construction of trust agreements."). *Cf.* Restatement (Third) of Property (Wills & Don. Trans.) § 11.3 cmt. i (2003) ("All other things being equal, most donors would want their donative documents to be as effective as possible."). The Petitioner is not only

---

[9] *Cf.* Syl. Pt. 5, *Painter v. Coleman,* 211 W. Va. 451, 566 S.E.2d 588 (2002) ("Where a will is made it is presumed that the testator intended to dispose of his whole estate, and such presumption should prevail unless the contrary shall plainly appear.").

[10] Syl. Pt. 3, *Painter v. Coleman,* 211 W. Va. 451, 566 S.E.2d 588 (2002) ("The law favors testacy over intestacy.").

20

asking this Court to adopt a construction of the Trust instrument that "fails to dispose of the entire [Trust] estate," he is *also* asking the Court to adopt a construction of Mrs. Short's will that "fails to dispose of the entire estate of Phyllis Short." Pet'r Br. at 33. Again, it is the duty of this Court to uphold a construction of both instruments that avoids an absurd result. Clearly, the settlors did not intend to execute a Trust and wills that "fail to dispose of their entire estate."

5. **The Petitioner's claims to the Trust are also barred by *res judicata*. On December 19, 2016, the Texas court ruled that the Petitioner, in both his personal and representative capacities, is not a beneficiary of the Trust. Under Texas law, that court's ruling is final despite the taking of an appeal, and entitled to full faith and credit from this Court.**

In any event, at this point the Petitioner's various misinterpretations of the Trust are irrelevant. Not only has the Circuit Court already declared that the Petitioner has absolutely no interest in the Trust, but the Texas probate court has done so as well. On December 19, 2016, the Texas court also granted summary judgment against the Petitioner, concluding as a matter of law that Mateo Cortez and "the Estate of Deborah Cortez" have zero interest in the Trust, and dismissing "any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez, has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust")." App. at 1957-58. Although a trial court decision in West Virginia is not *res judicata* until appellate proceedings have been exhausted, the same is not true in Texas. Under Texas law, the Texas probate court's decree is final and binding, entitled to full faith and credit from this Court, and constitutes *res judicata* barring the Petitioner's claims to the Trust and this appeal.

"By virtue of the full faith and credit clause of the Constitution of the United States, a judgment of a court of another state has the same force and effect in this State as it has in the state in which it was pronounced." Syl. Pt. 3, *State ex rel. Lynn v. Eddy*, 152 W. Va. 345, 163 S.E.2d 472 (1968). In Texas:

21

> *res judicata* precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. It requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.

*Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996) (internal citations omitted). "A judgment is final for the purposes of issue and claim preclusion despite the taking of an appeal unless what is called an appeal actually consists of a trial *de novo*." *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986).[11] Pursuant to *Scurlock*, a Texas probate court's judgment declaring the beneficiaries of a trust is *res judicata* even if an appeal is taken. *See Kuhns v. Bank One, Texas, N.A.*, No. 03-98-00177-CV, 1999 WL 699813, at *3 (Tex. Ct. App. 1999) (not designated for publication) ("Although the probate court's declaratory judgment was subject to a *de novo* review on appeal, that review did not constitute a trial *de novo*. The probate court's judgment was final for *res judicata* purposes ….").

This Court must give full faith and credit to the Texas probate court's December 19, 2016 order and judgment. First, the Texas court entered a final judgment on the merits of the Petitioner's claims, dismissing "any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez, has to any assets of The William D. Short and Phyllis D. Short Revocable Living Trust (the "Trust"), other than his claim for undistributed income from the Trust during the life of Deborah Cortez." App. at 1957-58. Although the Petitioner appealed that decision, the fact of an appeal does not affect the finality of the decision for purposes of *res judicata*. Second, the Petitioner cannot dispute he was a party to

---

[11] *Res judicata* is the generic term for the related concepts of issue and claim preclusion. *See Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Sav.*, 837 S.W.2d 627, 628 (Tex. 1992).

22

the Texas case: the Trustee sued the Petitioner in his individual capacity, App. at 81, and he filed his intervention claims in his capacity "as Representative of the Estate of Deborah Cortez." App. at 92. Third, the Petitioner cannot deny that the Texas court's judgment was based on the same claims he raised or could have raised here because the court granted judgment on his intervention claim that he was entitled to the Trust assets. The Texas court's December 19, 2016 order and judgment satisfies all of the elements of *res judicata* under Texas law, and therefore must be given full faith and credit by this Court. Accordingly, the Petitioner's claims before this Court are barred by *res judicata*, and this Court should affirm the Circuit Court's judgment and dismiss this appeal.

**B. THE TEXAS COURT IS NOT EXERCISING EXCLUSIVE JURISDICTION OVER THE TRUST. THE TRUSTEE'S LAWSUIT IN TEXAS WAS AN *IN PERSONAM* TORT ACTION FOR DAMAGES, AND NOT AN ACTION TO ADMINISTER THE TRUST. THE PETITIONER'S DEFENSE TO THE TRUSTEE'S TORT CLAIMS DID NOT CONVERT THE PROCEEDINGS IN TEXAS INTO A *QUASI IN REM* ACTION TO ADMINISTER THE TRUST.**

The Petitioner primarily argues that the Circuit Court lacked subject matter jurisdiction under *Princess Lida of Thurn & Taxis v. Thompson*, which applies to parallel *in rem* or *quasi in rem* proceedings where two courts are attempting to exercise control over the same property. 305 U.S. 456, 466 (1939). Pet'r Br. at 12-19. The Petitioner lacks standing to object to the Trustee's decision to file suit in West Virginia because he clearly has no interest in the Trust or these proceedings. Restatement (Third) of Trusts § 94 (2012) ("A suit against a trustee of a private trust to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained only by a beneficiary or by a co-trustee, successor trustee, or other person acting on behalf of one or more beneficiaries."). *Cf. United Bank, Inc. v. Blosser*, 218 W. Va. 378, 382-83, 624 S.E.2d 815, 819-20 (2005) (plaintiffs, who were not "blood relatives" of settlors as specified in the trust, were not beneficiaries and lacked standing to challenge administration of a charitable trust). Nevertheless, the Petitioner's argument that *Princess Lida* stripped the Circuit Court of jurisdiction misstates the

law and mischaracterizes the facts. The Petitioner's claim that the Texas court is "administering the Trust" is false, as is his argument that his declaratory claims in Texas were *quasi in rem*.

The Trustee initiated the proceedings in Texas to recover monetary damages from the Petitioner for stealing from the Trust, alleging the torts of conspiracy, conversion, and theft. App. at 81-91. In attempt to avoid liability on the Trustee's tort claims, the Petitioner subsequently filed a defensive intervention claim asking the Texas court to declare that all of the Trust assets belonged to Deborah Cortez and should be distributed to her estate. App. at 92-96. The *Princess Lida* case makes clear that both the Trustee's tort claims and the Petitioner's declaratory claims are *in personam* actions only, and do not require control of the Trust property to grant either parties' requested relief. Indeed, the Texas court agreed that the Trustee's action could proceed in West Virginia: "THE [TEXAS] COURT: I'm not going to prohibit them from proceeding, I'm not going to order them to dismiss in West Virginia. You all can go to West Virginia and argue." App. at 1464. The Circuit Court and the Texas court both properly determined that West Virginia has jurisdiction to adjudicate the Trustee's claims.

1. **The *Princess Lida* principle is a narrow exception to the general rule permitting concurrent jurisdiction over parallel lawsuits. It only applies where both courts "must control the property" to grant the relief sought by the parties. It does not apply to tort suits for monetary damages, or to declaratory claims to adjudicate an individual's right to trust property.**

The general and longstanding rule of concurrent jurisdiction is that parallel lawsuits filed in two different courts may proceed until one court enters a judgment that may be set up as *res judicata* in the other:

> a controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other.

24

*Kline v. Burke Const. Co.*, 260 U.S. 226, 230 (1922). *See also State ex rel. Small v. Clawges*, 231 W. Va. 301, 308, 745 S.E.2d 192, 200 (2013) (citing *Kline*) ("Where the judgment sought is strictly *in personam* ... both a state court and a federal court having concurrent jurisdiction may proceed with litigation, at least until judgment is obtained in one court which may be set up as *res adjudicata* in the other."). In *Princess Lida of Thurn & Taxis v. Thompson*, the Court articulated a limited exception to concurrent jurisdiction where "two suits are *in rem*, or *quasi in rem*, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought." 305 U.S. 456, 466 (1939). The Court went on to state that this exception applies "where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." *Id.* Seizing on this language, the Petitioner now argues that the Texas court is "administering the Trust" and therefore has exclusive jurisdiction over the Trustee's claims in West Virginia.

"Of course, not every action that somehow relates to or implicates a trust qualifies as a *quasi in rem* administration action." *Barbiero v. Kaufman*, No. 12-6869, 2013 WL 3939526, at *9 (E.D.Pa. July 30, 2013). *See also Princess Lida*, 305 U.S. at 465-66 (the fact that two courts "would be required to cover the same ground" is "not conclusive of ... jurisdiction"). *Princess Lida only* applies in the narrow set of circumstances where a court "must have control of the property ... in order to proceed with the cause and grant the relief sought." *Id.* at 466. By its terms, *Princess Lida does not apply* "where the judgment sought is strictly *in personam.*" *Id.* at 466. A tort claim for money damages is the classic example of an *in personam* action, and is not subject to *Princess Lida* even if the tort "relates to or implicates a trust":

> It is well settled that actions *in personam*, as for damages arising out of a tort, growing out of the same transaction and involving the same

25

parties, may be brought in both a state and a federal court, without either ousting the jurisdiction of the other.

*Haney v. Wilcheck*, 38 F. Supp. 345, 356 (W.D. Va. 1941). *Princess Lida **also does not apply*** "wherein the plaintiff seeks merely an adjudication of his right ... to participate in the *res* or as to the quantum of his interest in it." *Id.* at 466-67. "Such proceedings are not *in rem*; they seek only to establish rights; judgments therein do not deal with the property and other distribution; they adjudicate questions which precede distribution." *Commonwealth Trust Co. of Pittsburgh v. Bradford*, 297 U.S. 613, 619 (1936). "The primary distinction in this area of the law is weeding out claims that seek only to adjudicate an individual's right to trust property or tort suits against a trustee in his or her individual capacity. Such suits are *in personam* and do not trigger application of the *Princess Lida* principle." *Barbiero*, 2013 WL 3939526, at *9 (internal citations omitted).

    a.    ***The Trustee's tort action in Texas is an in personam action only, and does not trigger the Princess Lida principle. The relief sought by the Trustee in Texas consisted of monetary damages only and did not include matters regarding the Trust's administration. The Trustee brought those claims in West Virginia, where the Trust is administered and where the Trust res is located.***

The Petitioner claims that "the Trustee ... filed suit first in Travis County, Texas, alleging ... improper administration of the Trust and seeking to recover alleged assets of the Trust from Mr. Cortez." Pet'r Br. at 16. This is plainly a mischaracterization of the Trustee's lawsuit in Texas. The Trustee obviously did not sue herself for "improper administration of the Trust." The Trustee sued the Petitioner (who was never a Trustee and never administered the Trust) in tort for stealing from the Trust assets, seeking monetary damages for conspiracy, statutory violations of the Texas Theft Liability Act,[12] and common law conversion. App. at 81-91. These are clearly *in personam* tort claims. *L.F. Dommerich & Co. v. Bress*, 280 F. Supp. 590, 600 (D.N.J. 1968)

---

[12] The Texas Theft Liability Act creates a cause of action for damages against a person who commits theft. *See generally* Tex. Civ. Prac. & Rem. Code Title 6, Chapter 134.

26

("Clearly, the litigation in this Court is *in personam* in that it seeks a money judgment of damages against the named defendants, personally, for an alleged tort of conversion."). *Cf. Panama R. Co. v. Vasquez*, 271 U.S. 557, 561 (1926) ("an action *in personam* to recover damages for tort is one of the most familiar of the common-law remedies"). Indeed, the reason the Trustee filed suit in Texas was to obtain *in personam* jurisdiction over the Petitioner. *Cf. Shaffer v. Heitner*, 433 U.S. 186, 197 (1977) ("If a court's jurisdiction is based on its authority over the defendant's person, the action and judgment are denominated '*in personam*' and can impose a personal obligation on the defendant in favor of the plaintiff.").

Moreover, the Trustee sought as relief a "judgment: 1. Against Mateo Cortez ... in the amount of the [un]authorized payments ... 2. Against Mateo Cortez, for actual and additional damage under the Theft Liability Act ... 3. Against Mateo Cortez ... for exemplary damages," and an award of attorneys' fees and court costs. App. at 90. The Trustee did not ask the Texas court to make any determination regarding "forms of trust administration and management," such as "the ownership, control and administration" of the Trust or "the powers, duties and liabilities" of the Trustee. *Barbiero*, 2013 WL 3939526, at *9-10. Rather, the Trustee brought those claims in West Virginia, where the Trust was being administered and where the *res* of the Trust is located. Although the Trustee's claims in Texas related to the Trust, they were clearly tort claims against the Petitioner personally, and did not affect the actual administration of the Trust.

      **b.**    *The Petitioner's intervention claim in Texas did not convert those proceedings into a quasi in rem action, and did not trigger the Princess Lida principle. A declaratory claim to adjudicate an individual's right to trust property is not an in rem or quasi in rem action.*

The Petitioner argues that his intervention claim in Texas nonetheless created *quasi in rem* jurisdiction. Pet'r Br. at 16-19. The Petitioner admits that this claim "specifically asserted in a Texas court [the Estate of Deborah Cortez's] 'right to participate in the *res* or as to [its] quantum

27

of [its] interest in it," but then falsely asserts that this "obviously indicates that the Texas litigation involved the *res* of the Trust." Pet'r Br. 18. By its explicit terms, **Princess Lida *does not apply*** "wherein the plaintiff seeks merely an adjudication of his right ... to participate in the *res* or as to the quantum of his interest in it." 305 U.S. at 466-67. "Such proceedings are not *in rem*; they seek only to establish rights; judgments therein do not deal with the property and other distribution; they adjudicate questions which precede distribution." *Commonwealth Trust Co. of Pittsburgh v. Bradford*, 297 U.S. 613, 619 (1936). *Cf. Princess Lida*, 305 U.S. at 466-67 (citing *Bradford*). Again, although the Petitioner's intervention claim in Texas related to the Trust, it was an *in personam* declaratory claim "to adjudicate an individual's right to trust property" that did not "trigger application of the *Princess Lida* principle." *Barbiero*, 2013 WL 3939526, at *9.

**2.  The cases cited by the Petitioner are distinguishable, and do not apply to the facts before this Court. Both cases involved parallel suits where the relief requested would have directly interfered with the administration of the trusts.**

The Petitioner cites two cases that invoked the *Princess Lida* principle, neither of which support dismissal of this action. *See Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, (1939); *Barbiero v. Kaufman*, 580 Fed. Appx. 107 (3d Cir. 2014). Both cases applied *Princess Lida* because the parties sought to have two different courts grant relief that directly affected "the ownership, control and administration" of a trust, or "the powers, duties and liabilities" of a trustee. In *Princess Lida*, the plaintiffs originally sued in Pennsylvania state court when the trustee repudiated the trust agreement, and sought as relief performance of the agreement, an accounting of the trustee's actions, and removal of the trustee. 305 U.S. at 458. The plaintiffs' subsequent action in federal court also sought removal of the substitute trustees and an accounting. *Id.* at 459. Similarly, in *Barbiero*, the plaintiff-trustee filed suit in Illinois state court, requesting permission to deviate from the unanimity provision in the trust instrument, which the trustee contended prevented him from obtaining a loan needed to maintain the trust corpus. 580 Fed.Appx. at 109.

28

A beneficiary of the trust subsequently sued in Pennsylvania, seeking removal of the trustee. *Id.* As stated by the *Barbiero* court, both *Princess Lida* and *Barbiero* presented competing lawsuits that "intimately affect[ed] the administration of the trust itself." 580 Fed. Appx. at 112. The Trustee and the Petitioner's claims in Texas are clearly distinguishable, do not "intimately affect the administration of the trust itself," and do not affect this Court's jurisdiction.

## C. THIS COURT PREVIOUSLY CONSIDERED AND REJECTED THE PETITIONER'S *FORUM NON CONVENIENS* ARGUMENTS IN *STATE EX REL. MATEO CORTEZ v. WATERS*, RECORD NO. 16-0428. WEST VIRGINIA WAS AN APPROPRIATE AND CONVENIENT FORUM FOR ADJUDICATING CLAIMS RELATING TO A TRUST ADMINISTERED FROM THIS STATE.

The Petitioner next argues that the Circuit Court erred by not dismissing this case under West Virginia's *forum non conveniens* statute, W. Va. Code § 56-1-1a. Pet'r Br. at 19-29. "A circuit court's decision to deny a motion to dismiss based upon *forum non conveniens* will not be reversed unless the circuit court has abused its discretion." Syl. Pt. 1, *State ex rel. American Elec. Power Co., Inc. v. Nibert*, 237 W. Va. 14, 784 S.E.2d 713 (2016). The Petitioner previously sought a writ of prohibition when the Circuit Court declined to dismiss this case for *forum non conveniens*. *See State ex rel. Cortez v. Waters*, Record No. 16-0428. *See also* App. at 1837-82. This Court denied the Petitioner's request for a writ, and the Petitioner's renewed argument on appeal presents no reason for this Court to depart from its previous determination that the Circuit Court did not abuse its discretion. *See* App. at 638-39. Indeed, the Petitioner's brief largely repeats the same material from his petition for a writ of prohibition. *Compare* Pet'r Br. at 19-29 *to* App. at 1858 & 1862-82 (arguing the same points and cases).

"The plaintiff's choice of a forum is entitled to great deference." W. Va. Code § 56-1-1a(a). "A party seeking dismissal on grounds of *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *State ex rel. North River Ins. Co. v. Chafin*, 233 W. Va. 289, 294, 758 S.E.2d 109, 114 (2014). "[T]he defendant may overcome this preference by

29

demonstrating that the forum has only a slight nexus to the subject matter of the suit and that another available forum exists which would enable the case to be tried substantially more inexpensively and expeditiously." *State ex rel. J.C. ex rel. Michelle C. v. Mazzone*, 235 W. Va. 151, 160, 772 S.E.2d 336, 345 (2015).

The Circuit Court previously entered a detailed order denying the Petitioner's motion to dismiss after addressing each of the eight factors set forth in W. Va. Code § 56-1-1a, which this Court elected not to disturb and Respondent Barry will not repeat. App. at 462-72, 638-39. In his motion to alter or amend, the Petitioner asked the Circuit Court to reconsider its decision because the Texas court ruled on September 28, 2016 that it had personal jurisdiction over the other defendants to this action. App. at 731. The Texas court's ruling was issued after the Circuit Court entered summary judgment against the Petitioner, and was therefore irrelevant to whether the Circuit Court should have dismissed this case prior to judgment. Nonetheless, as part of denying the Petitioner's motion to alter or amend, the Circuit Court *again* addressed its reasoning for refusing to dismiss this case for *forum non conveniens*, listing multiple factors that weighed in favor of this litigation proceeding in West Virginia despite the Texas court's ruling. App. at 2919-22. In short, the Petitioner argues that this West Virginia action, involving the administration of a trust by a West Virginia Trustee, affecting fifteen (15) West Virginia residents, the corpus of which includes West Virginia real estate and money held in a West Virginia bank, should be dismissed and litigated in Texas, despite the fact that the Petitioner is the only party with any connection to Texas, and despite the fact that the Circuit Court and the Texas court have ruled that the Petitioner has no actual interest in the Trust or the distribution of the Trust assets. The Circuit Court correctly rejected the Petitioner's argument, and its decision should be affirmed.

30

**D. THIS COURT PREVIOUSLY CONSIDERED AND REJECTED THE PETITIONER'S COMITY ARGUMENTS IN *STATE EX REL. MATEO CORTEZ v. WATERS,* RECORD NO. 16-0428. WEST VIRGINIA DID NOT HAVE TO DEFER TO THE PROCEEDINGS IN TEXAS.**

The Petitioner next argues that the Circuit Court erred by not staying this case under W. Va. Code § 56-6-10 due to "principles of comity." Pet'r Br. at 8-12. The Petitioner did not ask the Circuit Court to stay this action under W. Va. Code § 56-6-10 and therefore waived that argument below.[13] *See* W. Va. R. Civ. P. 12(h) (defenses other than lack of subject matter jurisdiction are waived unless raised prior to judgment). *See also Zaleski v. West Virginia Mut. Ins. Co.,* 224 W. Va. 544, 550, 687 S.E.2d 123, 129 (2009) ("This Court has long held that theories raised for the first time on appeal are not considered.").

As to whether the Circuit Court should have dismissed this action under "principles of comity," the Petitioner has simply repackaged the same *forum non conveniens* argument that he made in his petition for a writ of prohibition, which this Court declined. *See* App. at 1844 (listing the first question presented as whether "the general principles of comity between the states provide the basis upon which a dismissal or stay can be issued pursuant to the doctrine of *forum non conveniens*"). *Compare* Pet'r Br. at 8-11 *to* App. at 1858-62 (arguing the same points and cases). *See also* App. at 638-39. The Circuit Court correctly decided that it was not required to defer to the proceedings in Texas: "it is settled that where the judgment sought is strictly *in personam*, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as *res judicata* in the other."

---

[13] The Petitioner did ask the Circuit Court to enter a stay "until such time as the Supreme Court of Appeals of West Virginia has had an opportunity to consider Mateo Cortez's Petition for Writ of Prohibition and rule on the same." App. at 555-70. The Petitioner never actually moved the Circuit Court to stay this action generally in deference to the Texas case.

*Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939). This Court has applied

the above rule to concurrent actions in different states:

> A judgment rendered in an action in a court of one state may be availed of as a bar to an action involving the same cause of action pending in a court of another state which was instituted before the institution of the action in which the judgment was recovered; and regardless of which action was first instituted the first final judgment rendered in one of such courts becomes conclusive in the other as res judicata.

Syl. Pt. 6, *State ex rel. Lynn v. Eddy*, 152 W. Va. 345, 163 S.E.2d 472 (1968). Thus, while W. Va.

Code § 56-6-10 does permit a trial court to stay proceedings upon proper request (which did not

occur here), the courts of this state are not automatically required to stay or dismiss an action due

to a concurrent suit in another court. The Texas court agreed, and declined to interfere with the

proceedings in West Virginia: "THE [TEXAS] COURT: I'm not going to prohibit them from

proceeding, I'm not going to order them to dismiss in West Virginia. You all can go to West

Virginia and argue." App. at 1464.

The premise of the Petitioner's argument to this Court on appeal, and his earlier and

unsuccessful *forum non conveniens* argument in his petition for a writ of prohibition, are identical.

The Petitioner points to his declaratory claim in Texas as proof that Texas is "administering the

Trust" and therefore has exclusive jurisdiction over the issues in West Virginia. The Petitioner

ignores the fact that his declaratory claim was not a claim to administer the Trust, and did not

create exclusive jurisdiction in Texas. *See Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S.

456, 466-67 (exclusive jurisdiction has no application to claims seeking to determine "the right of

any person to participate in the *res* or as to his quantum of his interest in it."). The Petitioner

further ignores the fact that: (1) the Trustee's claims in Texas were tort claims seeking *in personam*

damages against the Petitioner; (2) the Trustee did not ask the Texas court to decide how the Trust

should be administered or distributed, the scope of her obligations as Trustee, or to otherwise

32

assume control over the Trust; and (3) no other party asked the Texas court to decide how the Trust should be administered or distributed, the scope of the Trustee's obligations as Trustee, or to otherwise assume control over the Trust. Additionally, as the Circuit Court noted, the Trustee's claims in West Virginia are not identical to the claims filed in Texas and would not be resolved by that court's decision. App. at 3120. The Texas court dismissed the Petitioner's claim to the Trust in its entirety, and there is no live claim in Texas to decide how the Trust assets should be distributed among the heirs at law of Mr. and Mrs. Short. That claim is only pending here in West Virginia.

The Petitioner cites *Berger v. Berger* and *Morris v. Morris* in support of his argument. In *Berger* the Court reversed the trial court's refusal to grant a motion to stay a divorce action under W.Va. Code § 56-6-10 because there was a pending divorce between the same parties in North Carolina. 177 W. Va. 58, 350 S.E.2d 685 (1986). "Where the judgment or decree in another suit will be decisive, and a stay of proceedings is essential to justice, it will be ordered in conformity with section 6 of chapter 136 of the Code [now W.Va.Code 56-6-10]." Syl. Pt. 1, *Berger v. Berger*, 177 W.Va. 58, 350 S.E.2d 685 (1986). *Berger* is irrelevant to this case because the Petitioner failed to make a motion to stay under W.Va. Code § 56-6-10, and as noted above the Texas action is not identical to and will not be decisive of the claims in West Virginia. Irrespective of the outcome in Texas, the West Virginia court must still decide how the Trustee should distribute the Trust assets to the remaining parties. Moreover, the Texas court has already entered an adverse judgment against the Petitioner, so there is no reason to enter a stay to await that court's decision.

In *Morris*, the Court affirmed dismissal for lack of personal jurisdiction over the defendants, which is also irrelevant to this case. No. 15-1035, 2016 WL 6678988 (W. Va. Supreme Court, Nov. 14, 2016) (memorandum decision). Although the *Morris* opinion states that the case

should have also been dismissed because the same claims were being litigated in New Jersey, that language is *dicta* and relies on *Berger*, which again turned on W. Va. Code § 56-6-10 (which the Petitioner failed to invoke below). *Id.* at *5.[14] Accordingly, "principles of comity" did not require the Circuit Court to dismiss or stay this action.

## E. THE CIRCUIT COURT CORRECTLY DENIED THE PETITIONER'S REQUEST TO INTERVENE AS "THE ESTATE OF DEBORAH CORTEZ."

The Petitioner next argues that the Circuit Court erred by "denying the Estate of Deborah Cortez's motion to intervene where it was adjudicating the rights of the Estate without affording it due process." Pet'r Br. at 35. The Petitioner failed to even cite West Virginia Rule of Civil Procedure 24 ("Intervention") in his brief, let alone argue how the Circuit Court committed error under that rule. The Petitioner also failed to explain what due process right "the Estate of Deborah Cortez" possessed in the Trust; clearly it has none, as Article VIII, Section B of the Trust instrument only afforded an interest in the Trust to Deborah Cortez "during Deborah's life," which extinguished on her death. App. at 112.

The Petitioner claims that "the Estate of Deborah Cortez" was an indispensable party under Rule 19. Pet'r Br. at 35-40. If the Petitioner is now arguing that the Circuit Court should have dismissed this case for failure to join an indispensable party, the Petitioner waived that argument below. ("A defense of … failure to join a party indispensable under Rule 19 … may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." W.Va. R. Civ. P. 12(h)(2). "A Rule 12(h)(2) defense raised in a post-trial motion is not at the trial on the merits, within the meaning of the rule …. The clear thrust of

---

[14] The Petitioner and the *Morris* opinion also cite *Whan v. Hope Natural Gas Co.*, which was an action for attachment and garnishment. 81 W. Va. 338, 94 S.E. 365 (1917). Garnishment and attachment are *quasi in rem* proceedings that trigger exclusive jurisdiction. *See Pennsylvania R. Co. v. Rogers*, 52 W. Va. 450, 44 S.E. 300, 302 (1903) (stating that garnishment and attachment are in the nature of a proceeding *in rem*). *See also Robinson v. Cabell Huntington Hosp., Inc.*, 201 W. Va. 455, 463, 498 S.E.2d 27, 35 (1997) (same). The *Whan* case is thus also irrelevant.

the rule is that its enumerated defenses may be raised at any time before a disposition on the merits but not after." F. Cleckley, R. Davis, & L. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* at § 12(h)(2)[2], pp. 418-19 (4th Ed. 2012). The Petitioner admits that he did not move to dismiss for failure to join an indispensable party until "it was raised on September 29, 2016" as part of his motion to alter or amend. Pet'r Br. at 38. *See also* App. at 728-43.

As to intervention under Rule 24, "the Estate of Deborah Cortez" moved to intervene pursuant to West Virginia Rule of Civil Procedure 24(a)(2), which states:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

W. Va. R. Civ. P. 24. "West Virginia Rule of Civil Procedure 24(a)(2) allows intervention of right in an action if an applicant meets four conditions: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant must show that the interest will not be adequately represented by existing parties." Syl. Pt. 2, *State ex rel. Ball v. Cummings*, 208 W. Va. 393, 540 S.E.2d 917 (1999). The Circuit Court correctly determined that "the Estate of Deborah Cortez" could not meet any of the criteria for intervention.

First, the Petitioner's motion to intervene was untimely. "While Rule 24 of the West Virginia Rules of Civil Procedure provides for the intervention of parties upon a timely application, the timeliness of any intervention is a matter of discretion with the trial court." Syl. Pt. 3, *State ex rel. Ball v. Cummings*, 208 W. Va. 393, 540 S.E.2d 917 (1999). This Court has upheld refusals to

35

grant intervention where the movant had knowledge of a case but failed to move for intervention until after entry of judgment. *See West Virginia Public Employees Ins. Bd. v. Blue Cross Hosp. Service, Inc.*, 180 W. Va. 177, 375 S.E.2d 809 (1988) (motion to intervene untimely when filed three months after entry of dismissal order and movants knew or had reason to know of the pendency of the action prior to judgment); *Pauley v. Bailey*, 171 W. Va. 651, 301 S.E.2d 608 (1983) (permissive intervention) (motion to intervene untimely when filed almost one year after evidentiary hearings had closed and seven months after court's orders). As reflected by the docket sheet, the Petitioner had actual notice of this suit as early as December 4, 2015. App. at 1. The Petitioner knew or should have known at that time that he needed to "intervene on behalf of the Estate of Deborah Cortez" if he or his lawyers believed "the Estate" had a legitimate interest in the Trust. Instead, the Petitioner fought this case on other grounds, and specifically argued that he was personally entitled to the Trust assets as "the sole heir of the Estate of Deborah Cortez." App. at 570-71. The Petitioner did not move intervene "on behalf of the Estate of Deborah Cortez" until June 13, 2017 – eighteen (18) months after receiving notice of this suit, and nine (9) months after the Circuit Court rejected his claim to the Trust and granted summary judgment against him. App. at 6. The Circuit Court did not abuse its discretion in finding that the Petitioner's motion was untimely given his actual knowledge and his significant delay in seeking to intervene.

Second, "the Estate of Deborah Cortez" has absolutely no interest in the Trust. Under the second and third prongs of Rule 24(a)(2), the movant must demonstrate both "an interest relating to the property ... which is the subject of the action" and that disposition of the action may "impair or impede the applicant's ability to protect that interest." W. Va. R. Civ. P. 24. The reasons why "the Estate of Deborah Cortez" has no interest in the Trust are thoroughly set forth in Section V, subsection A of this brief. Deborah Cortez only possessed a life interest in the Trust income, which

extinguished when she died. The Circuit Court's disposition of this case did not impair the ability of "the Estate of Deborah Cortez" to protect its interest in the Trust because "the Estate of Deborah Cortez" had no interest to protect.

Third, "the Estate of Deborah Cortez" was adequately represented in this litigation by the Petitioner, who is the administrator and sole heir of the estate. As to adequacy of representation by existing parties, "generally courts compare the interests asserted by the proposed intervenor with the interests of the existing party. If the proposed intervenor's interest is not represented by the existing party, or the existing party's interests are adverse to those of the proposed intervenor, intervention should be granted. ... [However], if the interests are identical, intervention should be denied unless there is a compelling showing as to why the existing representation is inadequate." *State ex rel. Ball v. Cummings,* 208 W. Va. 393, 403, 540 S.E.2d 917, 927 (1999) (internal citations omitted). The Petitioner and "the Estate of Deborah Cortez" have identical interests in the Trust (zero) and identical interests in this litigation: they both seek distribution of the entirety of the Trust assets to "the Estate of Deborah Cortez," which would then flow through to the Petitioner personally as its sole heir. This identity of interest is clear from the simple fact that the Petitioner controls "the Estate of Deborah Cortez," and is the only person interested in a favorable judgment for the Estate. Indeed, the Petitioner and "the Estate of Deborah Cortez" are represented by the same legal counsel in this case, which would violate the West Virginia Rules of Professional Conduct if their interests were adverse in any way. *See* W. Va. R. Prof. Conduct § 1.7 (simultaneous representation of adverse parties in litigation is a non-waivable conflict of interest). "The Estate of Deborah Cortez" cannot deny that the Petitioner, as the administrator and sole heir of the Estate, had every opportunity to represent its claimed interest in this litigation. The real reason the Petitioner sought to "intervene" on behalf "of the Estate of Deborah Cortez" was to hide

37

behind a nominal party to avoid the Circuit Court's judgment, and to reargue in West Virginia the same ridiculous and insupportable legal theories that led to sanctions against his lawyers in Texas.

## F.    THE PETITIONER'S MISCELLANEOUS ARGUMENTS ARE FRIVOLOUS.

Finally, the Petitioner argues that the Circuit Court erred by granting summary judgment against him because Respondent Barry "sought no relief against Mr. Cortez upon which summary judgment could be predicated" and "judgment was issued without any discovery in the West Virginia action as to the true intent of the settlors of the Trust." Pet'r Br. at 29-30. Both arguments are without merit. The Circuit Court correctly determined that summary judgment was appropriate to resolve the Petitioner and the Respondents' competing claims to the Trust. The Circuit Court also correctly determined that discovery was unnecessary to determine the settlors' intent, which the parties (including the Petitioner) agreed was unambiguously expressed in the Trust instrument.

The Petitioner cites no legal authority supporting his argument that Respondent Barry could not seek partial summary judgment.[15] There is no formalistic requirement preventing a court from granting summary judgment when "the record reveals no genuine issue of material fact and the movant demonstrates an entitlement to judgment as a matter of law." *Poweridge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W. Va. 692, 698, 474 S.E.2d 872, 878 (1996) (citing W. Va. R. Civ. P. 56). The Trustee filed this action, seeking an "order directing the distribution of the assets of the Trust to those persons determined ... to be entitled to receive the same." App. at 32. The Petitioner alleges that "he is entitled to the trust proceeds," to the exclusion of Respondent Barry and all other parties in this case. *See* App. at 520. The Circuit Court correctly

---

[15] This Court generally declines to consider arguments that are not supported by legal authority.

38

determined that the Petitioner and Respondent Barry's interests are antagonistic and could be resolved through partial summary judgment.[16]

As to the Petitioner's argument that discovery was necessary to determine the settlors' intent, "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment." *Kanawha County Public Library Bd. v. Board of Educ. Of County of Kanawha*, 231 W. Va. 386, 400, 745 S.E.2d 424, 438 (2013). Discovery was unnecessary because the Petitioner conceded below that "the Trust expresses the true intent of the parties in plain and unambiguous language." App. at 569. Under Florida law, "unless the trust instrument is ambiguous the intent of the settlor must be ascertained from that which lies within the four corners of the instrument itself, and no extrinsic evidence of the settlor's intent is admissible." *Knauer v. Barnett*, 360 So.2d 399, 405 (Fla. 1978). Moreover, the Petitioner failed to show – or even argue – the minimum requirements for requesting further discovery to oppose summary judgment.[17] *See* W. Va. R. Civ. P. 56(f) ("Should it appear from the affidavits of a party opposing the motion that the party cannot for reason stated present by affidavit facts essential to justify the party's opposition, the court ... may order a continuance to permit ... discovery to be had ....").
Even for an informal Rule 56(f) motion, "at a minimum" the Petitioner was required to:

> (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material;

---

[16] The Petitioner recognized that the Circuit Court could also grant summary judgment in his favor if warranted, and actually submitted to the court a proposed *Order Granting Summary Judgment in Favor of Defendant Cortez.* App. at 666-71.

[17] Ironically, the Petitioner argues in another section of his brief that "[e]xtensive discovery was exchanged [in Texas] regarding ... Linda Murray's knowledge of the Trust, her activities with respect to the Trust, and her claims under the Trust." Pet'r Br. at 24. Assuming this is true, the Petitioner fails to explain why he did not oppose summary judgment in West Virginia by submitting affidavits based on the "extensive discovery" taken in Texas.

39

and (4) demonstrate good cause for failure to have conducted the discovery earlier.

Syl. Pt. 1, in part, *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W. Va. 692, 474 S.E.2d 872 (1996). The Petitioner made no effort to make this showing. The Petitioner *admitted* that the Trust plainly and unambiguously expressed the settlors' intent, and failed to "articulate some plausible basis" for the Circuit Court to find that discovery would "engender an issue both genuine and material" regarding their intent. Instead, the Petitioner asserted that "the Trust is unambiguous, but it should not be construed in the manner [] Barry has suggested," and went on to argue that he should "receive the Trust assets because he is the sole heir of the Estate of Deborah Cortez." App. at 571, 666-71.

## V.    CONCLUSION

The Petitioner's claims lack merit. The Trustee's claims were properly filed in West Virginia, and correctly decided by the Circuit Court. Respondent Barry therefore requests that the Court dispense with oral argument and enter a memorandum decision affirming the Circuit Court's orders and judgment.

Respectfully submitted,

Aaron C. Boone (WVSB #9479)
J. Tyler Mayhew (WVSB #11469)
BOWLES RICE LLP
Fifth Floor, United Square
501 Avery Street, Post Office Box 49
Parkersburg, West Virginia 26102
Telephone (304) 420-5501
Facsimile (304) 420-5587
aboone@bowlesrice.com

*Counsel for Respondent Connie Lou Keith Barry*

40

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Brief of Respondent Connie Lou Keith Barry* was served via first class U.S. Mail, postage prepaid, upon the below named counsel and *pro se* parties on the date indicated:

Ancil G. Ramey, Esquire
Steptoe & Johnson PLLC
825 Third Avenue, Suite 400
Huntington, West Virginia 25701

Robert S. Fluharty, Jr., Esquire
Fluharty & Townsend
417 Grand Park Drive, Suite 101
Parkersburg, West Virginia 26105

J. Nicholas Barth, Esquire
Barth & Thompson
202 Berkley Street
Charleston, West Virginia 26321

Leslie L. Maze, Esquire
Post Office Box 279
Elizabeth, West Virginia 26143

James W. Marshall, III, Esquire
H. F. Salsbery, Esquire
Bailey & Wyant, PLLC
500 Virginia Street East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710

William J. Brotherton, Esquire
Brotherton Law Firm
2340 FM 407, Suite 200
Highland Village, Texas 75077

Joseph T. Santer, Esquire
Santer and Santer
Post Office Box 306
Parkersburg, West Virginia 26102

Linda Lou Murray
197 Oakbrook Drive
Mineral Wells, West Virginia 26150

Sandra Kay Flesher Brown
99 Woodridge Drive
Mineral Wells, West Virginia 26150

Charlene Rae Flesher-Johnston
Post Office Box 793
Elizabeth, West Virginia 26143

Charlotte Fae Flesher-Ash
8653 White Swan Drive #104
Tampa, Florida 33614

Virginia Ann Roberts Villers
28649 Alessandria Circle
Bonita Springs, Florida 34135

Charles Bruce Roberts, Jr.
487 Wilson Fork
Elizabeth, West Virginia 26143

Lisa Ann Rader Smith
96 Franklin Street
Elizabeth, West Virginia 26143

Patricia Ann Marks Chapman
2670 Pettyville Road
Parkersburg, West Virginia 26101

James Berl Marks
1093 South Pleasant Hill Road
Belleville, West Virginia 26133

41

Thomas Wayne Marks
749 South Long Run Road
Belleville, West Virginia 26133

Randall Wayne Davis
1663 Brooksford Road
Kernersville, North Carolina 27284

Betty J. Webb
1834 South Pleasant Hill Road
Belleville, West Virginia 26133

Magen Elizabeth Whited
164 Joe Shore Drive
Ravenswood, West Virginia 26164

Dated this 15th day of December 2017.

Stuart A. McMillan

42